UNITED STATES of America, Plaintiff-Appellee,

v.

Dean J. LISINSKI, Defendant-Appellant.

No. 83–1504.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 28, 1983.

Decided Feb. 21, 1984.

Rehearing and Rehearing En Banc Denied April 2, 1984.

888

Thomas D. Decker, Thomas D. Decker & Assoc., Chicago, Ill., for defendant-appellant.

Victoria J. Meyers, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, WOOD, Circuit Judge, and GRANT, Senior District Judge.*

GRANT, Senior District Judge.

Defendant-Appellant Dean J. Lisinski appeals his conviction of two counts of extortion and one count of attempted extortion in violation of the Hobbs Act, 18 U.S.C. § 1951 (1976). Lisinski raises three issues for our consideration:

I) Whether the evidence adduced at trial was insufficient to sustain the extortion conviction;

II) Whether the evidence at trial impermissibly amended the indictment;

III) Whether the trial court abused its discretion in denying Lisinski's requests for the disclosure of grand jury material?

For the reasons stated below, we AFFIRM Lisinski's conviction on all counts.

### Facts

In a four count indictment returned in September, 1982, Lisinski was charged with

---

* Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

three counts of extortion and one count of attempted extortion by the wrongful use of fear of economic harm and under color of official right. The evidence at trial revealed that Louis Patras, the victim of Lisinski's extortionate demands, was the owner-operator of the William Tell II restaurant in Countryside, Illinois. In early 1980, the restaurant was in jeopardy of losing its liquor license because of an $82,000 Illinois sales tax liability. Because a liquor license was vital to the success of the restaurant, Patras contacted Lisinski, an acquaintance of his, for help. Lisinski worked for the Clerk of the Circuit Court of Cook County and had friends in the Illinois Liquor Control Commission and the Illinois Department of Revenue, the two agencies with whom Patras had to deal to retain his liquor license. Lisinski had previously told Patras that he had political influence and "... if you ever need anything from downtown, I will be able to help you."

On May 14, 1980, Lisinski accompanied Patras to a revocation hearing before the Liquor Control Commission and introduced Patras to its executive director, Jack Wallenda. Unbeknown to Patras, his liquor license was suspended that same day because of his substantial sales tax liability. On June 10, Lisinski took Patras once again to meet Wallenda. At that meeting, Wallenda told Lisinski and Patras that Patras' license had been "blocked." In Patras' presence, Lisinski told Wallenda to "unblock it." (R. 67–69). Wallenda did so and promptly issued Patras a new license. Several days later, Lisinski called Patras and demanded a thousand dollars "... to take care of some people." Patras paid Lisinski the money. This transaction formed the basis of Count I of the indictment of which Lisinski was found not guilty.

Patras continued to experience liquor license difficulties. On April 3, 1981, approximately 1 and ½ months before his liquor license was to expire, Patras received a phone call from Lisinski. Lisinski told Patras that it was urgent that he make a $1,000 payoff to Wallenda. Patras balked and said that he did not have the money. Within the hour, two acquaintances of Li-

sinski called Patras and urged him to make the payoff. Patras succumbed and borrowed as much as he could—$500—which he paid to Lisinski (the $500 which Patras borrowed was ultimately repaid from restaurant funds.) Lisinski told him that the payoff of $500, which formed the basis of Count II of the indictment, might or might not be enough.

Following Lisinski's second demand for money, Patras contacted the FBI and permitted them to tape his dealings with Lisinski. Two further demands for money to assist with Patras' liquor license problems occurred. On May 29, 1981, two days before Patras' liquor license was due to expire, Lisinski telephoned Patras and demanded payment of the $500 remaining from the April 3 payment. Patras, fearful that his license would be permitted to expire, paid the additional $500. On July 24, 1981, Lisinski met with Patras at the William Tell and arranged for a final payment of $3,000. The FBI supplied Patras with $3,000 and witnessed Lisinski accepting the money.

The indictment alleged three counts of extortion corresponding to the June, April and May demands for money. Count IV of the indictment alleged attempted extortion because the funds used were obtained from the FBI. After a bench trial, Lisinski was found not guilty of Count I because the extortionate demand was not made until after Lisinski had assisted Patras to reacquire his liquor license. Lisinski was found guilty on Counts II, III and IV and brings this appeal.

I

Whether the evidence is insufficient to sustain the extortion conviction?

a). Necessity of a Threat?

■ Lisinski contends that an indispensable element of extortion by wrongful use of fear of economic harm is a threat, whether direct or indirect. Lisinski argues that the evidence at trial showed no threat and that Patras' fear of economic harm was

self-generated. The government argues, on the other hand, that no threat is necessary. The government suggests that extortion by wrongful use of fear of economic harm is established by showing that the defendant preyed upon or exploited the victim's fear of economic harm. We agree.

Our analysis commences with the statute. *Mills v. United States,* 713 F.2d 1249, 1251 (7th Cir.1983). The Hobbs Act provides:

(a) *Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion* or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.

(b) As used in this section—

(2) *The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of* actual or threatened force, violence, or *fear* or under color of official right.

(emphasis supplied) 18 U.S.C. § 1951 (1976).

"The Hobbs Act ... is a broadly drawn statute. The cases construing the Act have repeatedly emphasized that the Congress, in passing the statute wanted to use all of the constitutional power it had to punish interference with interstate commerce by extortion, robbery or physical violence." *United States v. Sander,* 615 F.2d 215, 218 (5th Cir.), *cert. denied,* 449 U.S. 835, 101 S.Ct. 108, 66 L.Ed.2d 41 (1980), citing *Stirone v. United States,* 361 U.S. 212, 215, 80 S.Ct. 270, 272, 4 L.Ed.2d 252 (1960). This Circuit and others have long recognized that the term "fear" in the Hobbs Act includes fear of economic harm or loss. *See United States v. Dale,* 223 F.2d 181, 183 (7th Cir. 1955) ("We conclude that 'fear' as defined in the extortion section of the Anti-Racketeering Act should be given its ordinary meaning and consequently 'fear' would include fear of economic loss."); *United States v. Cusmano,* 659 F.2d 714 (6th Cir. 1981); *United States v. Forszt,* 655 F.2d 101

(7th Cir.1981); *United States v. Gerald,* 624 F.2d 1291 (5th Cir.1980), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1369, 67 L.Ed.2d 348 (1981).

Lisinski cites to *United States v. Enmons,* 410 U.S. 396, 93 S.Ct. 1007, 35 L.Ed.2d 379 (1973) for the proposition that extortion by wrongful use of fear of economic harm requires a threat. *Enmons* involved a situation where striking union members used violent means to achieve legitimate labor ends. The Supreme Court, in finding no violation of the Hobbs Act, analysed the meaning of the word wrongful as used in the statute:

... The term "wrongful" which on the face of the statute modifies the use of each of the enumerated means of obtaining property—actual or threatened force, violence, or fear—would be superfluous if it only served to describe the means used.... Rather, "wrongful" has meaning in the Act only if it limits the statute's coverage to those instances where the obtaining of the property would itself be "wrongful" because the alleged extortionist has no lawful claim to that property.

(footnote omitted) 410 U.S. at 399–400, 93 S.Ct. at 1009–1010. Lisinski argues that since the Hobbs Act applies only to situations where *both* the defendant's ends and means are illegitimate, the wrongful use of fear requires a threat. Otherwise, concludes Lisinski, "... all entrepreneurs would be guilty if their services or products were designed to respond to a consumer fear."

Lisinski totally misreads *Enmons. Enmons* is simply authority for the proposition that since all means of obtaining property which involve actual or threatened force, violence or fear are wrongful, "wrongful" means that the statute applies only to situations where the extortionist has no legitimate claim to the property. Otherwise, the use of the word "wrongful" in the statute would be redundant. *Enmons* does not constitute authority that the wrongful use of fear requires a threat.

Case law amply refutes Lisinski's arguments that the wrongful use of fear requires a threat. Exploitation of, or preying upon, the victim's fear constitutes wrongful use of fear and satisfies the statute. In *United States v. Crowley,* 504 F.2d 992 (7th Cir.1974), the extortion victims were the owners of bowling lanes who paid off the defendant, a police officer, to protect their business. There, as here, the policeman was not responsible for the conditions which generated the victim's fear. But the policeman exploited that fear, and was convicted under the Hobbs Act:

It is important to note that it is unnecessary for the government to prove that defendant actually created the fear in the minds of his victims. Rather, as the Court in *Callahan v. United States,* 223 F.2d 171, 174–176 (8th Cir.1955), *cert. denied,* 350 U.S. 862 [76 S.Ct. 102, 100 L.Ed. 764] ... held, *the exploitation of the victim's reasonable fear constitutes extortion regardless of whether or not the defendant was responsible for creating that fear and despite the absence of any direct threats.*

(emphasis supplied) 504 F.2d at 996; *See also United States v. Gerald,* 624 F.2d 1291, 1299 (5th Cir.1980) ("In the instant case, the decisive question under 18 U.S.C. § 1951 (the Hobbs Act) is whether Gerald [the defendant] intended to cause Carter [the victim] to pay the $25,000 by exploiting Carter's fear of economic loss.... The fear need not have been actually caused by Gerald; the statute is satisfied if Gerald intended to exploit that fear.") The Fifth Circuit noted in *United States v. Sander,* 615 F.2d 215, 218 (5th Cir.1980):

Appellant Sander argues that he never threatened Knapp, and consequently that the element of fear, a required element of the Hobbs Act, was not present. Fear of economic loss is covered by the Hobbs Act. The case law is also clear that the government did not have to show either that the fear was a direct consequence of the threat of economic loss or that Knapp personally feared Sander. *United States v. Quinn,* 514 F.2d 1250, 1266–67 (5th Cir.1975), *cert. denied,* 424 U.S. 955, 96

S.Ct. 1430, 47 L.Ed.2d 361 (1976). Subtle extortions are covered under the Hobbs Act, and the government satisfied its burden of proof if it showed circumstances surrounding the alleged extortionate conduct that rendered the victim's fear of threatened loss reasonable.

*See also United States v. Duhon,* 565 F.2d 345, 351 (5th Cir.), *cert. denied,* 435 U.S. 952, 98 S.Ct. 1580, 55 L.Ed.2d 802 (1978) ("In the present case, there is sufficient evidence to demonstrate the existence of a reasonable fear on the part of the victims and the requisite intent to exploit that fear.")

█ Here, looking at the evidence in a light most favorable to the government, *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), more than adequate evidence was adduced to sustain Lisinski's extortion conviction. Patras reasonably feared the loss of his liquor license because loss of the license would put the William Tell restaurant out of business. Although Lisinski did not create the vulnerable position in which Patras found himself, he exploited and preyed upon Patras' fear. Patras reasonably believed that if he did not cooperate with Lisinski, he would lose his liquor license.

Lisinski argues that, although the cases cited by the government state that no "direct threat" or "threat" is necessary for the wrongful use of fear, either direct or implied threats were present in each of those cases. To a certain extent, this is true. However, although no threat is necessary for the wrongful use of fear, by the very nature of extortion cases, threats—particularly "implied threats" will almost always be present. The implied threat will usually be that, unless the victim cooperates with the extortionist, economic loss will result. The extortionist need not be responsible for the situation in which the victim finds himself; what matters most are the "... circumstances surrounding the alleged extortionate conduct that rendered the victim's fear of threatened loss reasonable." *Sander, supra* at 218.

We conclude that the wrongful use of fear does not require a threat—although, in the victim's mind, the threat—usually implied—will be present. The wrongful use of fear is satisfied if the extortioner exploits the victim's fear of economic loss, as did Lisinski in this case. We hold that there was sufficient evidence to sustain Lisinski's extortion conviction.

b). Bribery, not Extortion.

 Lisinski contends that this is a case of bribery, not extortion, because of the fact that Patras was willing to pay to influence official action and because there was no compulsion on Lisinski's part. This argument is routine in extortion cases and meritless on the facts of this case. Bribery and extortion are not mutually exclusive. *United States v. Price,* 617 F.2d 455 (7th Cir.1979). "That such conduct may also constitute 'classic bribery' is not a relevant consideration." *United States v. Braasch,* 505 F.2d 139, 151 (7th Cir.1974), *cert. denied,* 421 U.S. 910, 95 S.Ct. 1561, 43 L.Ed.2d 775 (1975). Regardless of the fact that a prosecution for bribery might have been sustained, there exists more than adequate evidence to sustain Lisinski's extortion conviction. *See* section a, *supra.*

 Lisinski also argues, relying upon an unpublished opinion of dubious precedential value, that since he was merely acting as Patras' agent, he is not liable for extortion. This is an imaginative—but equally unavailing—variation on the bribery argument. More to the point, it misrepresents the evidence since it is obvious from the record that Lisinski was not acting as Patras' agent.

## II

Whether the evidence at trial impermissibly amended the indictment?

 Lisinski contends that the evidence at trial impermissibly amended the indictment. He notes that, although the indictment alleged that Lisinski affected interstate commerce by obtaining funds from Patras, the proof at trial showed that the funds for the extortionate payments came from the William Tell restaurant. Relying upon *United States v. Stirone,* 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960) and *United States v. Cusmano,* 659 F.2d 714, 718–19 (6th Cir.1981), Lisinski concludes that his conviction must be set aside.

The rationale underlying the prohibition against amendments to the indictment at trial is that "... a court cannot permit a defendant to be tried on charges that are not made in the indictment against him." *Stirone, supra* at 217, 80 S.Ct. at 273. For example, in *Stirone,* the indictment alleged a Hobbs Act violation affecting the movement of sand in interstate commerce. At trial, however, the government presented evidence showing an effect upon interstate commerce with respect to *steel* as well as sand. The Supreme Court reversed Stirone's conviction, finding that the indictment had been impermissibly amended by the proof at trial. Likewise, in *United States v. Cusmano,* 659 F.2d 714 (6th Cir. 1981), the Sixth Circuit reversed Cusmano's conviction where the indictment alleged extortion by wrongful use of fear of economic harm while the evidence at trial showed extortion by threats of violence and physical harm.

While there was a variation between the evidence at trial and the allegations of the indictment, it hardly rises to the level of a constructive amendment of the indictment. "Variances which create 'a substantial likelihood' that a defendant may have been 'convicted of an offense other than that charged by the grand jury' constitute constructive amendments." *United States v. Beeler,* 587 F.2d 340, 342 (6th Cir.1978). As this Circuit noted in *United States v. Warden,* 545 F.2d 32, 35 (7th Cir.1976):

... in order for a variance ... to be fatal, the evidence offered must prove facts materially different from those alleged in the indictment; a variance will not be deemed fatal where the defendant is so informed of the charges against him that he is protected against a second prosecution for the same offense and is able adequately to prepare his defense

against the charges set forth in the indictment. (citations omitted).

Here, the facts adduced at trial simply explained the allegations of the indictment. At trial, Patras testified that the William Tell restaurant was a corporation owned by him and his wife and the liquor license application he completed reflected that he was the 100% owner of the restaurant. The money which Patras paid to Lisinski came from restaurant funds; the evidence at trial merely showed that the funds were funneled through Patras. There was not, nor could there be, any allegation that this minor variation interfered with Lisinski's trial preparation. He was fully aware of the charges against him. We hold that there was no constructive amendment of the indictment.

## III

Whether the trial court abused its discretion in denying Lisinski's requests for the disclosure of grand jury material?

█ Lisinski contends that the district court erred in refusing to disclose grand jury transcripts to him, and that insufficient evidence was presented to the grand jury to sustain the indictment. Because we find that the district court properly refused Lisinski's request for the disclosure of grand jury transcripts, we need not address Lisinski's unsupported assertions that insufficient evidence was presented to the grand jury to sustain his indictment.

The original indictment of July 1982 charged Lisinski with extortion under color of official right. In September 1982, a superceding indictment was returned adding the allegation that the extortionate payments were induced by the wrongful use of fear of economic harm. The superceding indictment was returned by the same grand jury and without the presentation of additional evidence. Lisinski speculates that there was insufficient evidence to support his indictment and moved the district court for disclosure of grand jury transcripts. The district court, after examining the grand jury transcripts in camera, refused Lisinski's requests for disclosure of the transcripts.

Fed.R.Crim.P. 6(e)(3)(C)(i) & (ii) detail the circumstances under which grand jury proceedings may be disclosed:

(C) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may be made—

(i) when so directed by a court preliminarily to or in connection with a judicial proceeding; or

(ii) *when permitted by a court at the request of the defendant, upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury.*

If the court orders disclosure of matters occurring before the grand jury, the disclosure shall be made in such manner, at such time, and under such conditions as the court may direct.

(emphasis supplied). Lisinski relies upon *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 222, 99 S.Ct. 1667, 1674, 60 L.Ed.2d 156 (1979) as authority that disclosure is appropriate in this case since the need for disclosure outweighs the need for continued secrecy. We disagree.

"Rule 6(e) codifies the traditional practice of grand jury secrecy." *Matter of Grand Jury Proceedings, Miller Brewing Company,* 687 F.2d 1079, 1088 (7th Cir.1982). "There is a presumption of regularity which attaches to such proceedings and the defendants have a difficult burden to prove any irregularity." *United States v. Battista,* 646 F.2d 237, 242 (6th Cir.1981). Additionally, disclosure of grand jury proceedings will be had only upon demonstration by the party seeking disclosure of a "compelling necessity" or "a particularized need." *Miller Brewing Company, supra* at 1088 citing *Douglas Oil Co.,* 441 U.S. at 222–23, 99 S.Ct. at 1674–75. The standard of review of a district court's determination not to disclose grand jury proceedings is abuse of discretion since the "... court must exercise substantial discretion, weighing the need for secrecy against the need for disclosure

of specified documents and testimony occurring before the grand jury." *Id.*

There was no abuse of discretion in this case. Against the time-honored and serious policy of grand jury secrecy, Lisinski proffers an unsupported speculation that, possibly, insufficient evidence was presented to the grand jury to sustain the indictment. Lisinski simply fails to overcome the presumption of regularity accorded to grand jury proceedings, or demonstrate the "compelling necessity" necessary to require disclosure of grand jury proceedings. Indeed, the district court which examined the grand jury transcripts *in camera* found them to be adequate. We hold that, for the reasons stated above, the district court properly denied Lisinski's request for the disclosure of grand jury transcripts.

### Conclusion

Lisinski's conviction on all counts is AFFIRMED.