**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Sammy Parker FLYNT, Defendant–**
**Appellant.**

**No. 93–8150.**

United States Court of Appeals,
Eleventh Circuit.

Feb. 16, 1994.

Rehearing Denied April 15, 1994.

Tony H. Hight, Office of Tony H. Hight, Union City, GA, for defendant-appellant.

Janet King, Asst. U.S. Atty., Atlanta, GA, for plaintiff-appellee.

Before BLACK, Circuit Judge, JOHNSON and HENDERSON, Senior Circuit Judges.

PER CURIAM:

Sammy Parker Flynt was convicted, after a jury trial in the United States District Court for the Northern District of Georgia, for violations of the Hobbs Act, 18 U.S.C. § 1951, and money laundering, 18 U.S.C. § 1956(a)(1)(B)(i).[1] The district court sentenced him to thirty-seven months' imprisonment followed by three years of supervised release and ordered him to pay $140,948.31 in restitution, pursuant to the United States Sentencing Guidelines ("Sentencing Guidelines"). On appeal, Flynt complains that there was a constructive amendment of the indictment with respect to the Hobbs Act charges. He also challenges the sufficiency of the evidence as well as the district court's refusal to depart downward from the Sentencing Guidelines range. We affirm the convictions and sentence.

## I. BACKGROUND

Flynt was employed by the K–Mart Corporation ("K–Mart") as the traffic manager of its distribution center in Newnan, Georgia. In that capacity, he was responsible for shipping merchandise from the distribution center to retail stores throughout the southeastern United States.

According to the evidence, in 1969, Donald Hart, who operated a trucking firm named Fast Freight, Inc. ("Fast Freight"), met with Flynt to discuss the possibility of procuring a contract to transport K–Mart merchandise to its stores in Miami, Florida. Flynt awarded the work to Hart. By the mid–1970s, Fast Freight's transfer of K–Mart goods expanded to other cities in Florida. However, it declined after K–Mart established a private trucking fleet and also began shipping freight through another carrier. In 1981, Hart moved to Atlanta in an effort to revive Fast Freight's business with K–Mart. As a result of Hart's negotiations with Flynt, Fast

---

1. The government also sought the forfeiture of all proceeds traceable to the money laundering offenses. The jury's verdicts and the district court's order entered on the forfeiture counts are not at issue in this appeal.

Freight began picking up merchandise directly from the distribution center in Newnan, shipping it by railroad to Florida, and then transporting it to various K-mart stores in particular cities as it had done earlier. Between 1980 and 1985, the transportation of K–Mart goods became approximately eighty percent of Fast Freight's business.

During this time, Flynt began to complain to Hart about his position with K–Mart. He told Hart he deserved more money and a bigger title. On several occasions he expressed a desire to buy some property located next to his home, but claimed that he could not afford it. Hart offered to purchase the lot and then to give it to Flynt after full payment had been made. Hart testified that he made the offer to appease Flynt because he knew Flynt controlled the level of business K–Mart directed to Fast Freight. Flynt accepted and Hart began making monthly payments on the property.[2]

Flynt continued to complain to Hart about his impoverished financial condition and about needing more money. He voiced a belief that everyone in the Fast Freight organization made more money than he earned from K–Mart. Hart eventually started paying Flynt approximately $1,000.00 per month in cash taken out of personal salary checks issued to him through Fast Freight.[3] Hart testified that he did this because "there was competition out there," and Fast Freight "needed to make Mr. Flynt as happy as [it] possibly could to not lose any business." (R4–26–27).

Hart later arranged with a K–Mart official in Troy, Michigan to become one of K–Mart's "dedicated" contract carriers and organized a company called ASCO to handle that aspect of the business.[4] Fast Freight's alliance with K–Mart continued as in the past. Flynt observed that Hart's dealings with K–Mart had increased and complained that the money heretofore furnished by Hart was "no more than a pittance." (Id. at 31). At that point Hart offered to pay Flynt approximately $1,000.00 per week. He explained that in order to do so he would have to stop making payments on the lot and could no longer pay Flynt in cash. He told Flynt the payments would have to come directly out of company funds and would have to be made by check to another corporation. Flynt advised Hart to issue the checks to the Country Peddler, Inc. ("Country Peddler"), a Chapter S corporation under which Flynt's wife operated a store by the same name. Pursuant to this arrangement, between 1988 and 1990, Fast Freight issued twenty-three checks to the Country Peddler in amounts ranging from $1,000.00 to over $5,500.00.[5] Hart stated that Flynt generally came to Fast Freight's office once a month to pick up the checks.

In late 1989, Hart approached a friend, Barney Parker, who owned a company called Labor Management Services, Inc. ("LMS"), to act as an intermediary to facilitate the monthly payments. Hart instructed Flynt to submit an invoice to LMS each month, which in turn, would pay out these amounts from its corporate account. Fast Freight then reimbursed LMS. Under this arrangement, LMS issued to the Country Peddler, one check for $5,571.42 and six checks totaling $4,333.33 each.[6]

K–Mart eventually learned about the payments to Flynt. Flynt and his wife were later named in an indictment, in which Flynt was charged with numerous violations of the Hobbs Act, and he and his wife were charged with aiding and abetting each other in the

---

2. Payments on this property were charged in counts two, four, eight, ten and eleven of the indictment. The district court directed verdicts in Flynt's favor on these counts reasoning that it was the transfer of the property, which was not charged in the indictment, rather than the payments on it, that constituted the extortionate conduct.

3. These payments were charged in counts one, three, five, six, seven and nine of the indictment.

4. As a dedicated contract carrier, ASCO was restricted to hauling K–Mart's freight and was guaranteed a certain minimum number of miles per month.

5. These payments were charged in counts twelve through thirty-one and thirty-three through thirty-five of the indictment.

6. These payments were the subject of counts thirty-two and thirty-six through forty-one.

commission of money laundering offenses.[7] The district court directed a verdict in favor of Mrs. Flynt on all counts against her. Flynt was convicted of the Hobbs Act and money laundering charges related to the payments described above.

## II. CONSTRUCTIVE AMENDMENT OF THE INDICTMENT

The indictment states in relevant part:

1. At all times material to this Indictment, Donald Hart, owner of Fast Freight, Inc., Premier Transportation, Inc.,[8] and ASCO, was engaged in the transportation industry, that is, the hauling of articles and commodities by means of tractor/trailer, in interstate commerce and an industry which affects interstate commerce.

. . . .

3. On or about the dates listed herein, in the Northern District of Georgia, the defendant, SAMMY PARKER FLYNT, did unlawfully obstruct, delay and affect, and attempt to obstruct, delay and affect, commerce, as that term is defined in Title 18, United States Code, Section 1951, and movement of articles and commodities in such commerce, by extortion, as that term is defined in Title 18, United States Code, Section 1951, in that the defendant, SAMMY PARKER FLYNT, did obtain and attempt to obtain the property of Donald Hart, with his consent having been induced by the wrongful use of actual and threatened fear of economic harm, in that the defendant did wrongfully use his position as traffic manager at the Georgia Distribution Center, K–Mart Corporation, in order to obtain monies in the amounts listed below from Donald Hart, whose businesses provided transportation services to K–Mart Corporation by hauling articles and commodities. . . .

(R1–1) (footnote added).

■ Flynt argues that the foregoing portion of the indictment was constructively amended because it alleges that the victim in the case was Hart, while the proof at the trial demonstrated that the money was obtained from Fast Freight, a corporation, without any evidence showing that Hart owned the company. He also claims that the prosecutor, in his closing argument, suggested it was not necessary to prove that the money belonged to Hart. He maintains the court compounded this error by instructing the jury that he could be found guilty if he "induced or attempted to induce the person or persons described in the indictment to part with property" (R7–159), and by using the general term "victim," without specifically charging that the government was required to prove that the property taken belonged to Hart.

■ It is well established "that a court cannot permit a defendant to be tried on charges that are not made in the indictment against him." *Stirone v. United States*, 361 U.S. 212, 217, 80 S.Ct. 270, 273, 4 L.Ed.2d 252, 256 (1960). When the evidence at trial or the court's jury instructions deviate from what is alleged in the indictment, two distinct problems can arise—constructive amendment or variance. *United States v. Keller*, 916 F.2d 628, 633 (11th Cir.1990), *cert. denied*, 499 U.S. 978, 111 S.Ct. 1628, 113 L.Ed.2d 724 (1991); *United States v. Figueroa*, 666 F.2d 1375, 1378–79 (11th Cir.1982). The distinction between the two terms is important because constructive amendment of the indictment is *per se* reversible error. *Keller*, 916 F.2d at 633. A variance, on the other hand, requires reversal only when the defendant can establish that his rights were substantially prejudiced thereby. *Id.*

[A]n amendment occurs when the essential elements of the offense contained in the indictment are altered to broaden the possible bases for conviction beyond what is contained in the indictment. A variance occurs when the facts proved at trial deviate from the facts contained in the indict-

---

7. The money laundering counts were based upon the checks issued to the Country Peddler at Flynt's direction, which were deposited in the Country Peddler's corporate bank account.

8. Premier Transportation, Inc. was another company operated by Hart. It supplied some transportation services to K–Mart, but was not involved in any substantive way with Flynt or the charges alleged in the indictment.

ment but the essential elements of the offense are the same.

*Id.* at 634.

■ Initially, we observe that Flynt did not object to the prosecutor's closing argument. This claim of error that the comments of counsel worked a constructive amendment of the indictment can be reviewed, therefore, only for plain error. *See id.* at 636. The trial transcript reveals that Flynt's contentions on this score have no substance.

■ In addition, Flynt failed to properly preserve any error predicated on the court's instructions to the jury. At the conclusion of the court's charge, Flynt lodged several particular objections, none of which related to the identity of the victim. (*See* R7–170–71). He then stated he objected "as a matter of form" to the court's failure to give all of his requested charges. (*Id.* at 171). He never requested, however, a specific instruction that the government was required to prove that the money he received belonged to Donald Hart. (*See generally* R1–50, R7–91–105). Even if he had, the general objection he interposed would not have been sufficient to preserve the precise argument he now urges on appeal. Under the Federal Rules of Criminal Procedure, "[n]o party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection." Fed.R.Crim.P. 30; *see also United States v. Harmas,* 974 F.2d 1262, 1267 (11th Cir.1992). We find no plain error in the court's instructions as they relate to the purported amendment of the indictment.[9]

By contrast, Flynt specifically insisted at the trial that the checks issued by Fast Freight, which were introduced into evidence, impermissibly broadened the charges because they proved the victim to be Fast Freight, not Hart. Consequently, he preserved for appeal the claim that the evidence amended the indictment. As noted earlier, however, several of the offenses involved cash payments made directly by Hart out of

his salary. The remaining monies were funneled through Fast Freight, a company operated by Hart. Although there was no documentary evidence introduced concerning the ownership of Fast Freight, contrary to Flynt's assertion, there was evidence that it was Hart's business. Hart testified that he owned and operated Fast Freight. (R4–12). Fast Freight was referred to throughout the trial, by both the prosecution and the defense, as one of Hart's companies. Flynt had ample opportunity to cross-examine Hart on this issue or to offer evidence to the contrary, but failed to do so.

We agree with the government that Flynt's claim of error is similar to that raised by the defendant in *United States v. Lisinski,* 728 F.2d 887 (7th Cir.), *cert. denied,* 469 U.S. 832, 105 S.Ct. 122, 83 L.Ed.2d 64 (1984). In *Lisinski,* the indictment alleged that the victim of the defendant's extortionate demands was Louis Patras. The defendant contended the indictment was amended by proof at the trial that funds for the payments came from a restaurant, which was owned and operated by Patras. *See id.* at 889, 892. The court held that, although there was a minor variation between the evidence and the allegations of the indictment, it did not rise to the level of a constructive amendment. *Id.* at 892–93. *See also, United States v. Esposito,* 771 F.2d 283, 285 (7th Cir.1985) (indictment naming a business entity as the victim was not amended by evidence establishing the victimization of the owner-operator), *cert. denied,* 475 U.S. 1011, 106 S.Ct. 1187, 89 L.Ed.2d 302 (1986).

■ Here, the evidence of payments made through Fast Freight did not broaden the charges against Flynt so as to constructively amend the indictment. Hart was the victim of the offenses in the sense that he owned and operated the entity that generated the funds with which to pay Flynt. Further, no prejudice arose from the variance between the allegations of the indictment and the proof at trial. The government's response to Flynt's request for a bill of particulars made

9. Flynt also raises for the first time on appeal a confusing and patently meritless claim that the court modified the money laundering charges by failing to instruct the jury on a conspiracy theory. The indictment did not charge him with a conspiracy.

clear it intended to prove Hart's victimization through his ownership interest in the company. (*See* R1–35–4).

## III. SUFFICIENCY OF THE EVIDENCE

 Flynt next challenges the sufficiency of the evidence supporting both his Hobbs Act and money laundering convictions. The Hobbs Act prohibits interference with interstate commerce by means of extortion. 18 U.S.C. § 1951.[10] The term "extortion" is defined as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b). An offense occurs when a defendant exploits a victim's reasonable fear of economic loss. *United States v. Haimowitz*, 725 F.2d 1561, 1572 (11th Cir.), *cert. denied*, 469 U.S. 1072, 105 S.Ct. 563, 83 L.Ed.2d 504 (1984). To sustain a conviction it is not necessary to show that the defendant caused the fear or made a direct threat. It is sufficient to prove that the defendant intended to exploit the fear. *Id.* A person commits a money laundering offense when he conducts or attempts to conduct a financial transaction with money he knows to be the proceeds of an unlawful activity, with the purpose of concealing or disguising the nature, location, source, ownership or control of the proceeds. 18 U.S.C. § 1956(a)(1)(B)(i).

 The sufficiency of the evidence to support a conviction is a question of law subject to de novo review. *United States v. Thomas*, 8 F.3d 1552, 1556 (11th Cir.1993). We examine the evidence in the light most favorable to the government and must affirm a conviction if any reasonable construction of the evidence would permit the jury to find the defendant guilty beyond a reasonable doubt. *United States v. McKinley*, 995 F.2d 1020, 1025 (11th Cir.1993).

We have reviewed the record in accordance with the foregoing standard, keeping

in mind the elements of the required proof. We conclude that the evidence was sufficient to support Flynt's convictions.

## IV. SENTENCING

 Flynt finally faults the district court's failure to depart downward from the Sentencing Guidelines range. A sentencing court's refusal to depart downward is not appealable where the court believes it has the authority to depart, but determines that the facts of the case do not warrant such action. *United States v. Fossett*, 881 F.2d 976, 979–80 (11th Cir.1989); *Keller*, 916 F.2d at 637. Our review of the sentencing transcript convinces us that such was the case here.

Flynt's convictions and sentence are AFFIRMED.

---

**10.** Section 1951(a) provides:

 (a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.