[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-15043

_____

D.C. Docket No. 2:11-cr-00424-RDP-SGC-2

UNITED STATES OF AMERICA,

                                                        Plaintiff-Appellee,

versus

ARTAVIS DESMOND MCGOWAN,
a.k.a. Tav,

                                                        Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(June 10, 2020)

Before WILLIAM PRYOR, Chief Judge, JILL PRYOR and LUCK, Circuit
Judges.

PER CURIAM:

Artavis McGowan appeals his conviction and 280-month sentence for conspiring to distribute and possess with intent to distribute cocaine. On appeal, he challenges his conviction and sentence on three grounds. First, he argues that the government's introduction at trial of wiretapped phone conversations constructively amended his indictment, in violation of the Fifth Amendment. Second, he argues that the district court plainly erred by concluding that his 1998 Alabama conviction for drug possession was a "felony drug offense" under 21 U.S.C. §§ 841(b)(1)(A), 802(44) (2012). Third, in a letter filed under Federal Rule of Appellate Procedure 28(j), he argues that he is entitled to sentencing relief under the First Step Act of 2018. After careful review, and with the benefit of oral argument, we affirm.

## I.    BACKGROUND

### A.  Factual Background[1]

Agents with the Drug Enforcement Administration ("DEA") learned through a confidential informant that a drug trafficking organization in Texas was sending shipments of cocaine and heroin to Birmingham, Alabama. The organization would sell the drugs in Birmingham and send the money from those sales to Mexico. Based on information the confidential informant provided, DEA agents

---

[1] The facts come from the evidence adduced at trial and the unobjected-to facts contained in the presentence investigation report.

identified vehicles that were used to transport the narcotics.  The agents surveilled one of the vehicles and discovered that it was driven by Donaldo Figueroa Cruz.  Agents followed Cruz from a hotel to a residence at 1156 Skyline Drive in Birmingham.  They set up surveillance at the residence and witnessed vehicles coming and going.  They followed one vehicle—a black Jeep occupied by three men—when it left the house.  After deputies stopped the Jeep for speeding, the driver, McGowan, consented to a search.  The deputies seized $11,000 from the Jeep.

DEA agents obtained a search warrant for 1156 Skyline Drive.  There, they searched the car that Cruz had driven and discovered two hidden compartments and $10,000.  In the house, agents found approximately 4,418 grams of cocaine, 170 grams of crack cocaine, 46 kilogram-sized cocaine wrappers, and 613 grams of heroin, as well as digital scales and over $340,000.  Agents also searched a bedroom in the basement of the house where they found photographs of McGowan, greeting cards addressed to him, bundles of money wrapped in rubber bands, and marijuana.  In an interview with agents, Cruz confessed that McGowan was his customer.

## B.  Procedural Background

A federal grand jury charged McGowan with, among other things, conspiracy to distribute and possess with intent to distribute 5 kilograms or more of

3

cocaine hydrochloride, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A) (Count One). Count One alleged that McGowan participated in the conspiracy "[f]rom in or about August 2011[] to on or about October 5, 2011." Doc. 23 at 1.[2] McGowan pled not guilty.

The government filed an information under § 851 notifying McGowan that it would seek an enhanced penalty based on a prior conviction—namely, his 1998 Alabama conviction for unlawful possession of cocaine. The information explained that because McGowan had a prior conviction for a felony drug offense, he faced a 20-year mandatory minimum sentence under § 841(a)(1) and (b)(1)(A).[3]

McGowan filed a motion to exclude evidence of his possession of drugs found during the search of 1156 Skyline Drive, including heroin, arguing that this evidence was inadmissible to support the conspiracy charged in Count One. At a pre-trial hearing, the district court ruled that the heroin evidence was irrelevant to the cocaine trafficking conspiracy and therefore inadmissible.

The case proceeded to trial. At the beginning of the trial, the court reiterated that the evidence of drugs other than cocaine found at 1156 Skyline Drive was irrelevant to the conspiracy charged in Count One. To that end, the court

---

[2] Citations in the form "Doc. #" refer to numbered entries on the district court's docket.

[3] The First Step Act of 2018 reduced the mandatory minimum penalty under 21 U.S.C. § 841(b)(1)(A) for felony drug offenders with one prior qualifying drug offense from 20 years to 15 years. *See* Pub. L. No. 115-391 § 401(a)(2), 132 Stat. 5194, 5220.

instructed both parties not to use the word "heroin" during the trial.  Doc. 284 at 23.

The government called DEA agents to testify about the investigation into the drug trafficking conspiracy.  One agent, Sean Stephen, testified that in 2011, the DEA began investigating drug-trafficking operations in Birmingham.  The investigation led to the search of 1156 Skyline Drive.  Stephen testified that at the residence agents found cocaine bricks, heat-sealing bags, tape, and over $340,000.  During a break in Stephen's testimony and outside the presence of the jury, the government warned that it intended to have Stephen testify about wiretap recordings from phone calls between McGowan and his cousin James Harris.  In the calls, McGowan and Harris discussed drug transactions that the government believed may have involved heroin.  The court permitted the government to play the calls but instructed it to question Stephen so as to lead him to tell the jury that he believed the call concerned drugs, but not to identify the type of drugs.

Once his testimony resumed, Stephen testified that law enforcement obtained through a wiretap a recording of phone calls between McGowan and Harris.  The jury heard that the conversations took place on April 25, 2013.[4]  The government played the recorded conversations for the jury.  Stephen testified that in the recorded conversations McGowan and Harris used coded language to discuss

---

[4] McGowan was on house arrest pending trial at the time of his phone calls with Harris.

drugs, the drug operation and its members, and money connected to the operation. He testified that he did not know what type of drugs were being discussed in the calls. McGowan and Harris did not reference any specific drug in the recordings.

The government also called Jose Tavera Ugarte, who testified that he had worked with McGowan and delivered drugs to him and Harris. When McGowan was arrested, however, Ugarte started working solely with Harris. Outside the jury's presence, the government again informed the court of its intention to play a recorded phone conversation from 2013. This time, the phone call was between Ugarte and Harris. Over McGowan's objections, the court concluded that the call was admissible because, when the wiretap was made, the conspiracy to possess and distribute cocaine was ongoing.

The government played the recorded phone conversation between Ugarte and Harris for the jury. Ugarte testified that in the recorded conversation he and Harris were discussing a recent drug transaction where the finances were not adding up, which prompted Harris to discuss how $800,000 had been lost when law enforcement raided 1156 Skyline Drive.

At the close of evidence, the court instructed the jury that it could find McGowan guilty on Count One if it determined that: two or more persons agreed to try to accomplish a shared and unlawful plan to distribute or possess with intent to distribute cocaine, McGowan knew the unlawful purpose of the plan and

6

willfully joined in it, and the object of the unlawful plan was to distribute or possess with the intent to distribute cocaine.  The jury found McGowan guilty on Count One.

McGowan moved for a new trial and judgment of acquittal.  He argued that the introduction of the 2013 phone calls constructively amended his indictment in violation of his Fifth Amendment rights.[5]  He argued that the admission into evidence of the phone calls expanded the temporal scope of the indictment because the calls occurred approximately 18 months after his arrest and 16 months after the return of the indictment, well outside the time frame of the charged conspiracy.  He further argued that the introduction of the calls with Harris substantively expanded the indictment—which charged only a conspiracy to traffic cocaine—because they involved discussions of heroin.  The district court rejected these arguments and denied McGowan's post-trial motions, concluding that the admission of the recorded calls did not constructively amend his indictment because this evidence did not modify an essential element of the charge in Count One.

A probation officer prepared a presentence investigation report ("PSR").  The PSR calculated a total offense level of 40 and a criminal history category of I,

---

[5] McGowan also argued that the admission of the phone calls created a material variance from his indictment.  He has not raised that argument on appeal, though, so we do not consider it now.  *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

which resulted in a range of 292 to 365 months' imprisonment under the Sentencing Guidelines.  The PSR noted that McGowan had a 1998 Alabama conviction for unlawful possession of cocaine, which was the basis for the government's § 851 information.  Thus, McGowan's mandatory minimum term of imprisonment was 20 years.

McGowan initially objected to the PSR's determination that his Alabama conviction supported the government's § 851 information because the government had provided no documentation showing that he had waived or was afforded prosecution by indictment during his state criminal proceedings.  At sentencing, however, he withdrew that objection.  He raised no other objections related to the Alabama conviction.  Noting the guidelines range, the statutory mandatory minimum under § 841(b)(1)(A), and the seriousness of the crime, the district court sentenced McGowan to 280 months' imprisonment.

## II.    STANDARDS OF REVIEW

We review constitutional claims *de novo*.  *United States v. Tagg*, 572 F.3d 1320, 1325 (11th Cir. 2009).  Additionally, we review questions of statutory interpretation, including whether a prior state conviction qualifies as a "felony drug offense," *de novo*.  *United States v. Maupin*, 520 F.3d 1304, 1306 (11th Cir. 2008).  But where a defendant fails to present an issue before the district court, we review only for plain error.  *United States v. Wilson*, 788 F.3d 1298, 1310 (11th Cir.

8

2015). Under the plain error standard, the defendant must show that: (1) an error occurred, (2) the error was plain, and (3) the error affected his substantial rights. *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1904–05 (2018). When these three factors are met, we should correct the error if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id*. at 1905.

### III.   DISCUSSION

On appeal, McGowan argues that the government's introduction of the recordings of the 2013 wiretapped phone calls constructively amended his indictment by expanding the temporal and substantive scope of the charge in Count One, in violation of his Fifth Amendment rights. He also argues that the district court erred by concluding that he qualified for a 20-year mandatory minimum sentence under § 841(b)(1)(A) based on his 1998 Alabama conviction. Lastly, in his letter to this Court under Federal Rule of Appellate Procedure 28(j), submitted after this appeal was briefed, McGowan asserts that he is entitled to relief under the First Step Act. We address each argument in turn.

### A.  Constructive Amendment of Indictment

McGowan first contends that the introduction of the 2013 recorded phone calls constructively amended his indictment by expanding the temporal and substantive scope of the charge in Count One. He explains that the introduction of the phone calls broadened the temporal scope of his indictment because while

9

Count One alleged a conspiracy from August 2011 to October 2011, the phone calls took place in 2013. He further contends that the admission of the phone calls with Harris amended the substantive scope of his indictment because they were evidence of his involvement in heroin trafficking, which was not charged in Count One.

A fundamental principle derived from the Fifth Amendment is that "a defendant can only be convicted for a crime charged in the indictment" because it would be "unfair to convict a defendant on charges of which he had no notice." *United States v. Keller*, 916 F.2d 628, 633 (11th Cir. 1990). When the evidence at trial differs from what is charged in the indictment, the question arises whether the indictment has been constructively amended. *See United States v. Flynt*, 15 F.3d 1002, 1005 (11th Cir. 1994). A constructive amendment to an indictment occurs when the essential elements of the offense charged in the indictment are altered to broaden the possible bases for conviction beyond the indictment. *United States v. Dennis*, 237 F.3d 1295, 1299 (11th Cir. 2001). In determining whether an indictment was constructively amended, we look at whether the prosecutor's actions or the court's instructions, viewed in context, literally or effectively expanded the indictment. *United States v. Behety*, 32 F.3d 503, 508–09 (11th Cir. 1994). A constructive amendment amounts to *per se* reversible error. *Flynt*, 15 F.3d at 1005.

10

Here, no constructive amendment occurred because the admission of the 2013 phone calls into evidence did not alter the essential elements of the offense charged in Count One.  *See Dennis*, 237 F.3d at 1299.  First, we reject McGowan's argument that the phone calls broadened the temporal scope of the indictment. True, the phone calls took place in 2013, which was well after the approximate dates of the conspiracy alleged in the indictment—"in or about" August 2011 to "on or about" October 5, 2011.  However, the date of an offense is not an essential element unless the terms of a statute say otherwise.  *See United States v. Steele*, 178 F.3d 1230, 1234 (11th Cir. 1999) (holding that the date and time of an offense were not essential elements).  Further, viewed in the context of the evidence as a whole, the recorded phone calls did not literally or effectively expand the indictment.  *See Behety*, 32 F.3d at 508–09; *cf. United States v. Holt*, 777 F.3d 1234, 1261–62 (11th Cir. 2015); *United States v. Lehder-Rivas*, 955 F.2d 1510, 1515–19 & n.5 (11th Cir. 1992).  The government did not offer the recordings to prove the existence of a conspiracy in 2013.  Instead, the calls were proof that McGowan had participated in the charged conspiracy in 2011 by showing that:  he continued to communicate with the drug trafficking organization even after his arrest; once he was imprisoned, the organization was forced to restructure; and he was not simply an innocent bystander when the house at 1156 Skyline Drive was raided.  And, tying the call between Harris and Ugarte to the charged conspiracy,

11

Harris referred in the call to money that had been lost in the raid. The calls were admissible to show not only McGowan's participation in, but also the continuing nature of, the conspiracy.[6] *See United States v. Meester*, 762 F.2d 867, 876 (11th Cir. 1985) (evidence that members of a drug conspiracy committed murder after the time period alleged in the indictment was admissible to show the continuing nature of the drug trafficking conspiracy).

Second, the fact that his phone calls with Harris may have involved a coded discussion of heroin did not, as McGowan argues, broaden the substantive scope of the indictment. Nothing in the record suggests that McGowan was convicted of an offense other than the cocaine trafficking conspiracy charged in Count One. *See Behety*, 32 F.3d at 508–09. Notably, the court precluded the parties from mentioning heroin, Stephen testified that he did not know what drug was being discussed in phone calls, and the court instructed the jury that it could find McGowan guilty only if it determined that he engaged in a conspiracy to possess

---

[6] McGowan asserts that the district court, in rejecting his argument that the phone calls broadened the temporal scope of his indictment, failed to consider this Court's precedent requiring that the charged offense occur before the presentment of the indictment. *See United States v. McIntosh*, 580 F.3d 1222, 1228 (11th Cir. 2009) ("[T]he date of an alleged offense, as stated in an indictment, is not binding on the United States, and is only material in reference to the bar of limitation, and to show that the offense was committed anterior to the presentment of the indictment." (internal quotation marks omitted)). He contends that the government failed to satisfy this requirement because the 2013 phone calls "expanded the date contained in the indictment." Appellant's Br. at 31. We reject this argument. Although it is true that the government was required to prove that McGowan joined the conspiracy before the date of the indictment, nothing precluded it from presenting otherwise relevant evidence about that conspiracy—even where the evidence concerned events that occurred after the return of the indictment.

and distribute cocaine.  *See United States v. Gonzalez*, 661 F.2d 488, 492 (5th Cir. Unit B Nov. 1981) (rejecting a constructive-amendment challenge based on evidence of other uncharged drugs because the jury instructions "clearly restricted the charge to a conspiracy involving methaquaalone [sic] only").  No evidence about heroin was introduced at trial.  We disagree with McGowan that the phone calls broadened the possible bases for conviction, *see Dennis*, 237 F.3d at 1299, and therefore affirm on this ground.

## B.  Prior Felony Drug Conviction

Next, McGowan contends that the district court erroneously concluded that his 1998 Alabama conviction for possession of cocaine qualified as a "felony drug offense" that subjected him to a 20-year mandatory minimum sentence under § 841(b)(1)(A).  He argues that the court erred by failing to apply the categorical approach described in *Mathis v. United States*, 136 S. Ct. 2243 (2016), to determine whether his Alabama conviction was a "felony drug offense."  He maintains that the state statute under which he was convicted, Ala. Code § 13A-12-212, was indivisible and broader than the definition of "felony drug offense" in 21 U.S.C. § 802(44); thus, he argues, under the categorical approach, his Alabama conviction could not qualify.

In general, a person convicted under § 841(b)(1)(A) shall be sentenced to not less than 10 years.  21 U.S.C. § 841(b)(1)(A).  At the time of McGowan's

13

conviction, however, a person with a prior conviction for a "felony drug offense" was subject to a 20-year mandatory minimum sentence. *Id*. § 841(b)(1)(A) (2012), *amended by* First Step Act of 2018, Pub. L. No. 115-391 § 401(a)(2), 132 Stat. 5194, 5220. A "felony drug offense" is defined as an offense punishable by imprisonment for more than one year under any federal, state, or foreign law restricting or prohibiting conduct relating to, among other things, narcotic drugs (including cocaine). *Id*. § 802(17)(D), (44); *see also Burgess v. United States*, 553 U.S. 124, 126 (2008) (holding that § 802(44) provides the exclusive definition of the term "felony drug offense" in § 841(b)(1)(A)). In 1998, when McGowan was convicted, unlawful possession of a controlled substance in Alabama was a Class C felony publishable by a term of imprisonment no less than one year and one day. Ala. Code § 13A-12-212 (1987) (amended 2015); *see id.* § 13A-5-6(a)(3) (Class C felonies are punishable by not more than 10 years and not less than one year and one day of imprisonment).

Because McGowan never presented this argument to the district court, our review is for plain error. *Wilson*, 788 F.3d at 1310. McGowan is entitled to no relief on this claim because he has not shown that the district court plainly erred by failing to apply the categorical approach to determine whether his prior conviction qualified as a "felony drug offense" under § 841(b)(1)(A). An error is plain when it is obvious or clear under current law. *United States v. Williams*, 469 F.3d 963,

966 (11th Cir. 2006). Where neither the United States Supreme Court nor this Court has resolved an issue, there can be no plain error on that issue. *Id.* Here, McGowan has pointed to no precedent from the Supreme Court or this Circuit requiring courts to apply the categorical approach when determining whether a state conviction qualifies as a "felony drug offense" under § 841(b)(1)(A). Thus, he has shown no plain error, and we affirm on this ground.

## C. Relief Under the First Step Act

Lastly, McGowan argues that he is entitled to relief from his 280-month sentence because § 401 of the First Step Act, enacted on December 21, 2018, reduced the mandatory minimum penalty under § 801(b)(1)(A) from 20 years' to 15 years' imprisonment for offenders with one prior qualifying drug conviction. First Step Act § 401(a)(2). Assuming McGowan has not forfeited this argument by raising it for the first time in his Rule 28(j) letter,[7] we conclude that he cannot benefit from § 401. That section expressly instructs that relief is available only to offenders who had not been sentenced as of its enactment date. *See id.* § 401(c) (stating that § 401 "shall apply to any offense that was committed before the date of enactment of this Act, *if a sentence for the offense has not been imposed as of such date of enactment*") (emphasis added). McGowan was sentenced in 2014. He

---

[7] We note that McGowan arguably had no opportunity to raise the argument earlier because his briefing on appeal was completed in October 2018, two months before the First Step Act's passage.

argues that an exception to the Act's limited retroactivity should apply where, as here, a defendant's direct appeal was still pending when the Act became law. But we cannot recognize an exception that is contrary to the language of the statute. McGowan is entitled to no relief under the First Step Act.

## IV.   CONCLUSION

For the above reasons, we affirm.

**AFFIRMED.**