**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Glaberise MORGAN, Defendant–**
**Appellant.**

No. 96–3428.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 18, 1997.

Decided May 6, 1997.

---

James E. Beckman, Estaban Sanchez (argued), Office of the United States Attorney, Springfield, IL, for Plaintiff-Appellee.

David B. Mote (argued), Richard H. Parsons, Office of the Federal Public Defender, Springfield, IL, for Defendant-Appellant.

Before ESCHBACH, EASTERBROOK, and DIANE P. WOOD, Circuit Judges.

ESCHBACH, Circuit Judge.

Glaberise Morgan appeals his conviction of illegal possession of a firearm by a felon in violation of 18 U.S.C. § 922(g), claiming that the prosecutor made improper comments during closing arguments which violated his due process right to a fair trial. We have jurisdiction under 28 U.S.C. § 1291 and, for the reasons stated below, we affirm.

## I. Background

During the small hours of an April morning, police officers on patrol in Springfield, Illinois, noticed defendant Morgan duck behind a house. Thinking this was suspicious, they began to follow him in their patrol car, traveling west on Clay street. As Morgan turned north and began to run up an alley, the officers noticed a long brown object protruding from his leg area, which he appeared to be carrying under his arm. After turning the car down the alley, Officer Carpenter got out and gave chase on foot, while his partner, Officer Bennett, remained in the patrol car. During the chase, Officer Carpenter lost sight of Morgan momentarily. When Officer Carpenter caught sight of Morgan again, he was crawling backwards on his hands and knees from a bush in front of a white house belonging to June Florence. After Officer Carpenter yelled for him to stop, he saw Morgan run from the house, sans brown object. Officer Carpenter pursued Morgan across the street, where Morgan unsuccessfully attempted to hide behind a car at Shane Mason's house. There, Officer Carpenter apprehended Morgan. Morgan had white flakes on his clothing and mud on his knees. Testimony indicated that the ground in the area of the bush was muddy and that the white paint on Florence's house was peeling. When Officer Bennett investigated the area, he found a long brown gun case containing a semi-automatic rifle by the bush in front of Florence's house. He also found a sawed-off 12 gauge shotgun.

The officers never actually saw Morgan with weapons, only the brown object. There were also no identifiable fingerprints on the weapons. However, Florence's neighbor, Shane Mason, testified that he saw Morgan dropping or throwing down objects that appeared to be weapons at Florence's house. Mason testified that he could not describe the objects he saw, but he knew that they were weapons from their shape and the sound that they made when they hit the ground. Mason also testified that a person would have to crouch down to get behind the bush, but when he saw Morgan, Morgan was standing next to it.

Because Mason's testimony constituted the government's only direct evidence of weapon possession, Mason's credibility was an obvious issue. The defense attacked Mason's credibility in several ways on cross examination. It pointed out inconsistencies between his testimony and that of the police. For example, at the time of the arrest, Mason came out to speak to the police. Officer Bennett recalled speaking to Mason briefly, but did not recall him saying anything about seeing Morgan with weapons. Mason testified that he did tell Officer Bennett this, but Officer Bennett was just not paying attention. Mason also testified that Morgan either dropped the weapons or threw them down. But the shotgun lay at the base of the porch at a 90 degree angle to the gun case.

On cross examination, Officer Carpenter admitted that it was unlikely that the guns were just tossed into this position. There was also some inconsistency as to where Mason gained knowledge about guns. In addition, the defense brought out that Mason wore glasses and had memory problems stemming from a head injury. Finally, the defense attacked as incredible the fact that Mason could tell that the objects he saw Morgan drop were weapons, but could not describe the objects. Mason and Florence also testified that there is a crime problem in their neighborhood, particularly with guns and drugs. However, no one testified to seeing anybody else in the area that night.

Later that evening, Officer Carpenter saw Morgan in the holding cell speaking to another inmate. Although Officer Carpenter could not hear what was being said, he saw Morgan mimic a pumping action with his hands, the way one would pump a shotgun, and then shake his head as if to indicate "no." The shotgun found at the scene was a pump shotgun. Neither officer in the patrol car, nor the officer that transported Morgan to holding, told Morgan that they had found a pump shotgun. Although, it is possible that Morgan overheard Officer Bennett tell Officer Carpenter a weapon was found, Officer Bennett never indicated the weapon was a pump shotgun.

The defense strategy was to introduce a reasonable doubt that Morgan was the one who put the weapons behind the bush. The defense suggested that anyone could have put the weapons there, it was in fact a high crime area, and who knows, maybe someone else was there that night. The defense also attempted to discredit Mason's eyewitness testimony and stressed that without that, no one actually saw Morgan with a weapon.

During closing arguments, the prosecution first suggested that Mason had no reason to lie. Defense counsel countered that Mason in fact was lying, and proceeded to argue the reasons why the jury should not believe Mason. Defense counsel suggested that Mason was motivated to lie by his desire to help the police and get the neighborhood cleaned up. During rebuttal, Assistant United States Attorney ("AUSA") Sanchez made the following comments:

> How is Mr. Mason lying? Why would Mr. Mason lie?
>
> Mr. Mote suggests to you because he wants to clean his neighborhood. It is a sad day in our society when a citizen, an honest citizen steps forward and says I saw a crime being committed and I am willing to come to court and testify to it. You would do it for your neighbors, and so did he. But today he comes in here and he is called a liar. And that, ladies and gentlemen, is a shame. Because the next time you require the help of your neighbor, is it going to be your answer? Or your neighbor relies on you to help him, is it going to be your answer, am I going to be called a liar for coming forth just like Mr. Mason was in that trial I sat in—

Morgan's counsel objected to these comments, stating "It's perfectly proper for us to raise questions about the credibility of the Government's witness." The judge responded:

> You're absolutely correct that it · is, Mr. Mote. But it's also the prerogative of the Government to respond to those charges. And it seems to me that the Government— the jury has been thoroughly instructed that they utilize their own experiences and observations in life, that they are the judges of the facts, and that the purpose of closing arguments are [sic] for counsel to discuss the evidence. Now, that's a broad brush, and a broad umbrella, and I think that both of you have been given ample leeway.

Defense counsel continued to object on the ground that "we're getting into an argument that the jury should base its credibility determination on how they would want to be viewed. And I think that that is improper, it should be based on what they saw and heard in court." The judge overruled the objection and the prosecutor moved on to a different topic.

The jury subsequently convicted Morgan of possession of a firearm by a felon and possession of an unregistered firearm, in violation of 18 U.S.C. § 922(g) and 26 U.S.C. § 5861(d), respectively. The conviction on

the second count, possession of an unregistered firearm, was subsequently vacated. However, the judge denied Morgan's motion for a new trial based on the prosecutor's comments. Morgan now appeals, alleging these remarks were improper because they constituted vouching for the witness's credibility and because they injected broader issues into the trial than the guilt or innocence of defendant. We review the district court's denial of a motion for a new trial for abuse of discretion. *United States v. Knox,* 68 F.3d 990, 1000 (7th Cir.1995), *cert. denied sub nom. Carreiro v. United States,* —— U.S. ——, 116 S.Ct. 926, 133 L.Ed.2d 854 (1996); *see also United States v. Williams,* 81 F.3d 1434, 1440 (7th Cir.1996) ("Having watched the jury as they listened to the testimony, having listened to the testimony and the arguments himself, having his finger as it were on the pulse of the trial ... the district judge was in a better position than we to weigh the imponderables involved in a judgment of prejudice.").

## II. Discussion

■■■ Morgan argues that the prosecutor's allegedly improper closing argument prejudiced his case, and thus denied him his due process right to a fair trial. In reviewing improper comments by a prosecutor we first determine if the comments, looked at in isolation, were improper. *United States v. Severson,* 3 F.3d 1005, 1014 (7th Cir.1993); *United States v. Badger,* 983 F.2d 1443, 1450 (7th Cir.1993). If they are improper, we must then examine the record as a whole to determine if the comments deprived defendant of a fair trial. *Severson,* 3 F.3d at 1014; *Badger,* 983 F.2d at 1450. "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned.... The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986) (internal quotations omitted). "To carry this burden, [the defendant] must show that it is at least likely that the misconduct complained of affected the outcome of his trial— i.e., caused the jury to reach a verdict of

guilty when otherwise it might have reached a verdict of not guilty." *Rodriguez v. Peters,* 63 F.3d 546, 558 (7th Cir.1995) (internal quotations omitted). If the comments did not render the defendant's trial unfair, there is no constitutional error and we cannot reverse, regardless of our desire to deter improper conduct. *See United States v. Gonzalez,* 933 F.2d 417, 433 (7th Cir.1991); *United States v. Pirovolos,* 844 F.2d 415, 427 (7th Cir.1988); *United States v. Mazzone,* 782 F.2d 757, 763 (7th Cir.1986). As this court has previously noted, other, more appropriate means of deterring such misbehavior exist. *See Mazzone,* 782 F.2d at 763 ("It is better to punish the prosecutor directly; there is no lack of direct sanctions for a lawyer's misconduct, of which improper advocacy is a well-recognized species."); *see also United States v. Hasting,* 461 U.S. 499, 506 n. 5, 103 S.Ct. 1974, 1979 n. 5, 76 L.Ed.2d 96 (1983) (suggesting alternative means of deterring prosecutorial misconduct, including ordering the prosecutor to show cause why he should not be disciplined by the court or asking the Department of Justice to initiate disciplinary proceedings).

■■■ The challenged comments were improper, not because they vouched for the witness's credibility, but because the prosecutor invited the jury to consider issues beyond the guilt or innocence of the defendant. As for vouching, the prosecutor did not inject his personal opinion into the trial merely by characterizing Mason as "an honest citizen." "[T]he government is allowed to comment on the credibility of a witness ... as long as the comment reflects reasonable inferences from the evidence adduced at trial rather than personal opinion." *United States v. Goodapple,* 958 F.2d 1402, 1409–10 (7th Cir.1992). The challenged comments were immediately preceded by the prosecutor's argument that the evidence showed Mason to be truthful because his testimony was corroborated by another witness. *See United States v. Catalfo,* 64 F.3d 1070, 1080 (7th Cir.1995) (holding prosecutor's description of defendant as a liar was not improper), *cert. denied,* —— U.S. ——, 116 S.Ct. 1683, 134 L.Ed.2d 784 (1996); *United States v. Auerbach,* 913 F.2d 407, 418 (7th Cir.1990) (holding comment that defen-

dant "is guilty" and "has done what he is charged with" was not improper vouching). Thus, the description of Mason as an "honest citizen" was a permissible inference from the evidence, not improper vouching.

■ On the other hand, the government clearly violated the proscription against appealing to the jurors' emotions and inviting the jury to consider the social consequences of its verdict. *See Severson*, 3 F.3d at 1015 (holding comment that invited conviction for reasons other than proof of guilt beyond a reasonable doubt was improper); *United States v. Kelly*, 991 F.2d 1308, 1314 (7th Cir.1993) (holding comment that appealed to jury's emotions was improper). AUSA Sanchez improperly put the jurors in Mason's place by asking how they would feel if they were called liars when they attempted to help. He also implied that if the jury disbelieved Mason (as would be demonstrated by an acquittal), people would be more reluctant to come forward and testify for fear that they, too, would be called liars. Thus, the prosecutor's comments improperly injected issues into the trial beyond the guilt or innocence of defendant. Every trial lawyer should know that this kind of argument exceeds the bounds of propriety.

■ Having determined that the comments were improper in isolation, we must now examine them in context to decide if they prejudiced Morgan. We examine five factors to determine whether the comments affected the fairness of the trial: 1) the nature and seriousness of the statement; 2) whether the statement was invited by the conduct of defense counsel; 3) whether the district court sufficiently instructed the jury to disregard such statements; 4) whether the defense could counter the improper statement through rebuttal; and 5) the weight of the evidence against the defendant. *Rodriguez*, 63 F.3d at 558; *Severson*, 3 F.3d at 1014; *see also Darden*, 477 U.S. at 181–82, 106 S.Ct. at 2471–72. The import of each factor depends on the circumstances of each case, but the weight of the evidence is generally the most important consideration. *Rodriguez*, 63 F.3d at 558; *United States v. Henry*, 2 F.3d 792, 795 (7th Cir.1993); *United States v. Neely*, 980 F.2d 1074, 1087 (7th Cir.1992). Because we are convinced that these comments did not prejudice Morgan, and thus did not deprive him of a fair trial, we affirm.

■ Two of these factors weigh in Morgan's favor. First, Morgan had no opportunity to respond because the statement was made during the government's rebuttal. Second, the comments were not invited. Contrary to the government's argument, AUSA Sanchez went beyond "right[ing] the scale." *United States v. Young*, 470 U.S. 1, 13, 105 S.Ct. 1038, 1045, 84 L.Ed.2d 1 (1985). He did more than simply respond to defense counsel's argument.[1] The attack on Mason's credibility clearly warranted the prosecutor's argument that Mason testified honestly. But his remarks went beyond defending Mason's credibility. The prosecutor asked the jurors to consider how they would feel in Mason's position, as well as the alleged risk that their vote could deter future witnesses from coming forward. These considerations simply do not bear on the likelihood that Mason was lying. The defense did not invite this improper response.

On the other side of the scale, however, three factors weigh in the government's favor. Based on these factors, we do not believe that AUSA Sanchez's improper remarks persuaded the jury to convict based on considerations other than the evidence of guilt. The first factor is the nature and seriousness of the comment. Although the comment was improper, it was not inflammatory. *Compare Darden*, 477 U.S. at 180 n. 12, 106 S.Ct. at 2471 n. 12 (holding no due process violation based on prosecutor's comment that "I wish that I could see [the defendant] sitting

---

1. Even if defense counsel engaged in improper vouching, this does not license the prosecutor to discard his ethical duties and make improper arguments himself. *Mazzone*, 782 F.2d at 762–63. An invited response cuts against reversing, not because we sanction responding with impropriety, but because remarks that do "no more than respond substantially in order to 'right the scale,'" *Young*, 470 U.S. at 12–13, 105 S.Ct. at 1044–45, are less likely to have prejudiced the defendant. As the Supreme Court has stated: "Clearly two improper arguments—two apparent wrongs—do not make for a right result." *Id.* at 11, 105 S.Ct. at 1044.

here with no face, blown away by a shotgun"). Nor did the prosecutor's comments misstate the evidence or directly violate a constitutional right, such as the right to remain silent. *See id.* at 181–82, 106 S.Ct. at 2471–72. Our confidence in the jury is bolstered by the fact that the court clearly communicated to the jury its responsibility to decide the case based only on the evidence. Although the judge gave no immediate curative instruction because he overruled the objection, the court's comments in response to the objection did remind the jury that "they utilize their own experiences and observations in life, that they are the judges of the facts, and that the purpose of closing arguments are *[sic]* for counsel to discuss the evidence." The final instructions, given prior to closing arguments, also directed the jury that they are the sole judges of a witness's credibility, that closing arguments should be disregarded to the extent not supported by the evidence, and that they should not be influenced by sympathy or public opinion.[2] *See United States v. Davis,* 15 F.3d 1393, 1400–02 (7th Cir.1994) (considering final instructions as factor in government's favor, despite lack of immediate curative instruction); *Severson,* 3 F.3d at 1015 (same).

Finally, and most importantly, the weight of the evidence persuades us that the improper comments did not deprive Morgan of a fair trial. Although Mason's testimony constituted the government's only direct evidence, the circumstantial evidence is compelling. Both Mason and Officer Carpenter saw Morgan by the bush in front of Florence's house. Officer Carpenter saw Morgan running with a long brown object before Morgan arrived at the bush. When he left the bush, Morgan was no longer carrying the object. A search under the bush after the chase revealed (lo and behold!) a long brown object: a gun case containing a rifle. The police found no other long brown object in the area that night. In addition, there exists no evidence that anyone else was in the area of the bush that night. In light of this evidence, and having examined the record as a whole, we are convinced that the prosecutor's improper comments did not violate Morgan's due process right to a fair trial. The district court certainly did not abuse its discretion when it refused to grant Morgan's motion for a new trial based on these remarks. Thus, the judgment of the district court is AFFIRMED.

---

2. Final jury instructions included the following:

> You are the sole judges of the credibility of the witnesses, and of the weight to be given to the testimony of each of them. In considering the testimony of any witness, you may take into account his intelligence, his ability and opportunity to observe, his age, his memory, his manner while testifying, any interest, bias or prejudice he may have, and the reasonableness of his testimony in light of all the evidence in the case.

> . . . . .

> Opening statements of counsel are for the purpose of acquainting you in advance with the facts counsel expect the evidence to show. Closing arguments of counsel are for the purpose of discussing the evidence.

> Opening statements, closing arguments and other statements of counsel should be disregarded to the extent they are not supported by the evidence.

> . . . . .

> You are to consider only the evidence received in this case. You should consider this evidence in the light of your own observations and experiences in life. You may draw such reasonable inferences as you believe to be justified from proved facts.
> You are to disregard any evidence to which I sustained an objection or which I ordered stricken. Anything you may have seen or heard about this case outside the courtroom is not evidence and must be entirely disregarded. You should not be influenced by sympathy, prejudice, fear or public opinion.