**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Gilberto Lopez GRANADOS,
Defendant–Appellant.**

No. 97–1900.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 7, 1997.

Decided April 24, 1998.

Brian P. Netols, Brian R. Havey (argued), Office of the United States Attorney, Criminal Division, Chicago, IL, for Plaintiff–Appellee.

Steven Shobat (argued), Chicago, IL, for Defendant–Appellant.

Before POSNER, Chief Judge, and EASTERBROOK and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Gilberto Lopez Granados appeals his conviction for conspiracy and attempt to commit extortion in violation of 18 U.S.C. § 1951(a). He argues that the evidence was insufficient to convict him, and that certain comments made by the prosecutor during closing argument and the judge's erroneous oral charge to the jury deprived him of a fair trial. Because we find these arguments unpersuasive, we affirm Granados's conviction.

## I. HISTORY

Granados published a Spanish-language newspaper in Chicago entitled La Tribuna de America. Granados distributed this newspaper free of charge throughout the Mexican community in Chicago on a weekly or biweekly basis. One of Granados's competitors was Socorro Grajeda, the publisher of another Spanish-language newspaper called El Pueblo. Prior to purchasing La Tribuna, Granados had worked for Grajeda at El Pueblo. The two had a falling out, after which Granados ceased writing for El Pueblo.

In addition to her publishing efforts, Grajeda was president of Mexicanos de Afuera ("MEDA"), a not-for-profit organization that distributes food to members in need and also provides attorneys for members with legal problems. Granados had also once worked at MEDA, but his involvement with MEDA ceased at about the same time he quit working for El Pueblo.

A few weeks after Granados quit El Pueblo and MEDA, he began publishing articles in La Tribuna. These articles were highly critical of MEDA, Grajeda, and Grajeda's associate, Homer Alvarado. The articles claimed that MEDA was defrauding the community, that the food it distributed was "waste from warehouses," and that Grajeda behaved "like a vulgar market woman" in promoting MEDA.

On at least two occasions Grajeda encountered Granados on the street. On each occasion she pleaded with him to stop publishing the derogatory articles. Granados responded that he would not stop until he had destroyed both Grajeda and MEDA.

Granados's attacks continued throughout 1987 and 1988. In February 1989, a local grocery store owner, Serafin Castillo, bought La Tribuna from Granados. He published two issues, one of which contained an article that referred favorably to MEDA. However, because of Castillo's inexperience in publishing, he was unable to continue printing the paper.

In May 1989, the derogatory articles in La Tribuna resumed. Castillo told Grajeda that Granados had repurchased La Tribuna. Grajeda contacted Granados and again asked that he cease printing articles critical of her and MEDA. Granados repeated his intent to continue publishing the articles until both Grajeda and MEDA were destroyed. However, a few days later, Granados called Grajeda at MEDA and said that if she paid him, he would stop printing the articles. Grajeda responded that she did not have money to pay him.

After this telephone conversation between Granados and Grajeda, Castillo began calling and visiting Grajeda. He instructed Grajeda to obtain the money to give to Granados. Castillo informed Grajeda that Granados wanted $26,000 to stop writing the articles. He also assured Grajeda that if she found the money for Granados, he would ensure that Granados ceased publishing derogatory remarks about her and MEDA.

In October 1989, Grajeda confided in her business associate, Homer Alvarado. She explained the constant pressure she was receiving from Castillo to get the money to give to Granados. Alvarado contacted the Federal Bureau of Investigation ("FBI"), who in turn contacted Grajeda.

FBI agents recorded the next phone call from Castillo to Grajeda. In that conversation, Castillo inquired about the money and said that Granados wanted to meet the next day to arrange payment. Grajeda asked to speak with Granados directly, but Castillo refused. Shortly after the telephone conversation, Castillo showed up at the MEDA offices. He told Grajeda that Granados would talk to her but that she would have to call him from a pay phone because of Granados's fear that she was recording the call. Grajeda, Castillo, and an undercover FBI agent posing as Grajeda's friend obliged. At the pay phone, Castillo dialed a number and handed the phone to Grajeda; Granados answered. Grajeda told Granados that she had the money for him and that she wanted assurance that the articles would stop. Granados told her to arrange it with Castillo. After the conversation, Grajeda asked Castillo why he was involved in this situation; he responded that he wanted to see the articles stopped and that Granados would pay him some money he was owed if everything worked out. Castillo arranged a meeting between Grajeda and Granados for the next day at his grocery store.

The next day Castillo called Grajeda and told her that he and Granados were ready to meet. The FBI agents equipped Grajeda with a body recorder and transmitter and provided her with cash to give Granados. The agents treated the cash with a fluorescent contact powder. During the meeting, Granados insisted that Grajeda give the money to Castillo. Grajeda refused because Granados was the one writing the articles. In addition, Grajeda wanted a written guarantee that the articles would stop; Granados refused to give such a guarantee, stating that Grajeda could use it to put him in jail. However, he did offer to give Grajeda a receipt for the money. Grajeda then handed Granados the money.

When the FBI agents heard that the money had changed hands, they entered the store. Both Granados and Castillo had the fluorescent powder on their hands, and they were both arrested.

Castillo and Granados were tried in a joint trial in the District Court for the Northern District of Illinois. On October 10, 1990, a jury found Granados guilty of conspiracy and attempt to affect interstate commerce by extortion, in violation of 18 U.S.C. § 1951(a). On the date scheduled for sentencing, Granados failed to appear in court. The district judge issued a bench warrant for his arrest. The government did not locate Granados until December of 1996. In April 1997, the district court entered a judgment of conviction and sentenced Granados to an 18–month term of imprisonment followed by one year of supervised release. Granados filed this timely appeal.

## II. ANALYSIS

### A. *Sufficiency of the Evidence*

■■■ A defendant challenging the sufficiency of the evidence faces "a heavy burden." *United States v. Campbell*, 985 F.2d 341, 344 (7th Cir.1993). An appellate court reviews the evidence in the light most favorable to the government, *see id.*, and will uphold the conviction if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *see also United States v. Katalinich*, 113 F.3d 1475, 1480 (7th Cir.), *cert. denied*, — U.S. ——, 118 S.Ct. 260, 139 L.Ed.2d 187 (1997). An appellate court will overturn the verdict only if the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. *See United States v. Agostino*, 132 F.3d 1183, 1192 (7th Cir.1997); *United States v. Hickok*, 77 F.3d 992, 1002 (7th Cir.), *cert. denied*, 517 U.S. 1200, 116 S.Ct. 1701, 134 L.Ed.2d 800 (1996); *United States v. Moralez*, 964 F.2d 677, 679 (7th Cir.1992).

■■■ The jury found Granados guilty of conspiracy to commit extortion and attempt to commit extortion in violation of the Hobbs

Act, 18 U.S.C. § 1951(a). Extortion is the wrongful use of force or fear, including fear of economic harm, to obtain money or property from another person. *See* 18 U.S.C. § 1951(b)(2) (defining extortion); *United States v. Sturman*, 49 F.3d 1275, 1281 (7th Cir.1995) (recognizing § 1951 includes fear of economic harm); *United States v. Lisinski*, 728 F.2d 887, 890 (7th Cir.1984) (same). To establish the conspiracy offense, the government had to "provide substantial evidence that a conspiracy existed and that the defendant knowingly agreed to join that conspiracy." *United States v. Larkins*, 83 F.3d 162, 166 (7th Cir.1996). To support a conviction for attempt to commit extortion, the government needed to prove that Granados attempted to obtain money or property from Grajeda through extortionate means (i.e. through wrongful use of force or fear), and that the extortion affected interstate commerce. *See United States v. Knox*, 68 F.3d 990, 995–96 (7th Cir.1995), *cert. denied, sub nom. Carreiro v. United States*, 516 U.S. 1119, 116 S.Ct. 926, 133 L.Ed.2d 854 (1996); *United States v. Morgano*, 39 F.3d 1358, 1371 (7th Cir.1994). The government also needed to prove that Grajeda's fear was reasonable. *See Knox*, 68 F.3d at 996.

■ Granados argues that the evidence produced at trial was insufficient to prove that he was part of a conspiracy, that he acted with the intent to extort money from Grajeda, or that Grajeda's fear of economic harm was reasonable. We disagree.

A reasonable jury could have concluded that Granados was part of a conspiracy to extort money from Grajeda based on Granados's interactions with Castillo and Castillo's interactions with Grajeda. The evidence showed that Granados told Grajeda that he would stop publishing the articles if she paid him; then Castillo entered the scene, exerting constant pressure on Grajeda to come up with the money. Castillo also relayed messages between Grajeda and Granados, including information regarding the amount of money Granados wanted. When Grajeda told Castillo she had the money and wanted to talk to Granados, Castillo took her to a pay phone, dialed Granados's number, and put Grajeda on the phone. In that conversa-

tion, Granados told Grajeda to "arrange" the transaction with Castillo. The following day, Castillo told Grajeda to meet him and Granados at the grocery store; Grajeda complied and both Granados and Castillo were present. Given the above evidence, a reasonable jury could find the necessary elements to support a conspiracy conviction. *See Larkins*, 83 F.3d at 166 ("The jury properly may find an agreement to conspire based upon circumstantial evidence and reasonable inferences drawn therefrom concerning the relationship of the parties, their overt acts, and the totality of their conduct." (quotations omitted)).

Likewise, the evidence of Granados's intent to extort Grajeda was sufficient to support a conviction. Granados knew that the articles he wrote were damaging to Grajeda; on several occasions Grajeda pleaded with him to stop because she feared people would stop patronizing her businesses and supporting MEDA. Granados called Grajeda and told her he would cease publishing the damaging articles if she gave him money. This offer evidences an intent to obtain Grajeda's money by wrongfully preying on her fear of economic harm.

■ Granados argues that his conduct "was not done with the requisite intent to create fear in Grajeda for the purpose of depriving her of her money." In other words, Granados claims that to be convicted of extortion the government had to prove that he wrote the damaging articles with the intent of later extorting money from Grajeda. This misstates the law. The government need not prove that the defendant created the fear that he subsequently exploited. *See Lisinski*, 728 F.2d at 891. For example, in *United States v. Crowley*, 504 F.2d 992 (7th Cir.1974), the extortion victims were bowling alley owners who paid off a police officer to protect their businesses. *See id.* at 993. The police officer did not create the conditions which generated the victims' fear, yet he wrongfully used that fear and was convicted of extortion under § 1951. *See id.* at 995–96. We stated, "[i]t is important to note that it is unnecessary for the government to prove that [the] defendant actually created the fear in the minds of his victims. Rather . . . the

exploitation of the victim's reasonable fear constitutes extortion regardless of whether or not the defendant was responsible for creating that fear." *Id.* at 996.

*Crowley* stands for the proposition that a defendant can be guilty of extortion by preying on fear he did not create. Thus the *sine qua non* of a § 1951 violation is the wrongful use of the victim's fear, regardless of whether the defendant created the fear or even intended to create the fear. Granados may not have originally intended to create fear by publishing his articles. However, once he knew that Grajeda was becoming desperate for him to cease publishing the articles, he used her fear by requiring that she pay him money to stop. This action is sufficient for a conviction under § 1951(a).

To hold otherwise would be inconsistent with our *Crowley* decision. If it is sufficient that, by chance or luck, *someone else* created the fear which you exploit, then it is equally sufficient that *you*, by chance or luck, create the fear which you later exploit.

Granados's final argument is that the evidence produced at trial was insufficient to find that Grajeda's fear of economic harm was reasonable. However, Grajeda testified that the articles were "doing a lot of damage to [her]self and to the organization [MEDA] personally and economically." Tr. at 85, *United States v. Castillo*, No. 90 CR 267 (N.D.Ill. Oct. 2, 1990) (hereinafter Trial Tr.); *see also id.* at 67, 70. Additionally, Grajeda testified that MEDA lost members after Granados began publishing his articles. *See* Trial Tr. at 161. This evidence was sufficient to support the conclusion that Grajeda had a reasonable fear that continuing publication of the articles would further harm her economically.

### B. *Prosecutor's Remarks During Closing Argument*

Granados contends that the prosecutor's remarks during closing argument were improper and deprived him of a fair trial. We employ a two-part test for assessing remarks alleged to be improper. First, we determine whether the comments, looked at in isolation, were improper. *See United States v. Morgan*, 113 F.3d 85, 89 (7th Cir.

1997); *United States v. Butler*, 71 F.3d 243, 254 (7th Cir.1995); *United States v. Johnson–Dix*, 54 F.3d 1295, 1304 (7th Cir.1995). If the remarks were improper, we then look at the remarks in the light of the entire record to determine whether the defendant was deprived of a fair trial. *See Morgan*, 113 F.3d at 89; *Butler*, 71 F.3d at 254; *Johnson–Dix*, 54 F.3d at 1304. Because Granados did not object to the statements at the time, we review the prosecutor's alleged improper remarks for plain error. *See United States v. Laurenzana*, 113 F.3d 689, 695 (7th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 240, 139 L.Ed.2d 170 (1997). "The discretion to correct plain error should be employed in those circumstances in which a miscarriage of justice would otherwise result, namely, in those cases in which the error has affected the outcome of the district court proceedings." *Id.* (citing *United States v. Olano*, 507 U.S. 725, 734–36, 113 S.Ct. 1770, 1777–79, 123 L.Ed.2d 508 (1993)).

Granados complains about the following language in the prosecutor's closing argument:

Read the articles when you go back to the jury room. Read the translations, and ask yourselves what kind of—what thoughts would go through your mind if you were out there reading those articles, what would you think about Meda, would you patronize Meda? Ask yourselves how you would feel if you were Socorro Grajeda, and you knew that your business associates, and your friends and other people that you came into contact with were reading things like that about you, would you feel that perhaps you wouldn't be as effective in your business dealings as you may have been if those articles were not published?

Trial Tr. at 446. After the government's closing argument, the court asked for a sidebar. The court noted that:

[I]t may not be altogether proper to ask the jury to decide what they as individual persons might have done or they as individuals might have felt or thought; that may not be proper argument. It is something that you should consider. I don't

think that at this point that's an egregious misstatement of the law, but if [defense attorney] wants to go into that, he may, and certainly in rebuttal, the Government may choose to clarify that; but, it isn't really what I as a juror would have done, it is what the law would require and also what the instructions I receive as a juror tell me I should consider.

Trial Tr. at 446–47.

■■■■ We will assume, without deciding, that the comments, looked at in isolation, were improper, because we find the second step of the analysis to be determinative. We do not believe that the comments deprived Granados of a fair trial or affected the outcome of the proceedings. *See Laurenzana,* 113 F.3d at 695; *Morgan,* 113 F.3d at 89. We look to five factors to determine the effect on the fairness of the trial: 1) the nature and seriousness of the prosecutorial misconduct; 2) whether the conduct of the defense counsel invited the prosecutor's remarks; 3) whether the trial court's instructions to the jury were adequate; 4) whether the defense was able to counter the improper arguments through rebuttal; and 5) the weight of the evidence against the defendant. *See Butler,* 71 F.3d at 254. The prosecutor's remarks, while potentially misstating the legal measure for "reasonableness," were not egregious. The comments were not invited by defense counsel's actions, but the court did explicitly invite the defense counsel to respond to the argument in his own closing. The defense counsel declined the invitation. The court's instructions, although one of the subjects of this appeal, did adequately inform the jury of the law; the court instructed the jury that it "should not be influenced by sympathy, prejudice, fear or public opinion," Trial Tr. at 474, and that "[a]ttempted extortion by wrongful use of fear of economic harm requires that the fear be reasonable under the circumstances," Trial Tr. at 480. Finally, the weight of the evidence supports Granados's conviction. In light of the above factors, Granados cannot persuade us that the prosecutor's remarks deprived him of a fair trial.

Because we review for plain error, Granados must prove not only that the remarks denied him a fair trial but also that the outcome of the proceedings would have been different absent the remarks. Even if we thought Granados could sustain the former proposition, the latter fails under the weight of the evidence against him. We therefore decline to vacate his conviction because of the prosecutor's remarks.

### C. *Jury Instructions*

■■■■ According to the transcript, the district court gave the following instructions to the jury regarding Count 1 of the indictment, conspiracy to commit extortion:

In order to establish the offense of conspiracy, the government must prove these elements beyond a reasonable doubt:

1. That the alleged conspiracy existed;

2. That an overt act was committed in furtherance of the conspiracy; and

3. That the defendant knowingly and intentionally became a member of the conspiracy.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all of the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant guilty.

Trial Tr. at 477. Given the evidence before us, it is impossible to prove that a transcription error occurred in the last line omitting the word "not".[1] However, we find it significant that no one, neither the defense nor the government, objected during the reading of this instruction. Defense counsel was diligent enough to question other, more obscure points in the oral instructions. *See* Trial Tr. at 486–87. If the court had so grossly misstated the law as the transcript suggests, diligent counsel on either side should have objected. We believe that it is more likely than not that the court gave a correct oral statement and the transcription is erroneous,

1. This difficulty is highlighted in this case be-

cause the original court reporter is deceased.

and we are not inclined to set aside the verdict on this point.

 Even if we believed the transcript to be correct, we would not set aside the verdict. Granados did not object to this instruction at trial; therefore we review only for plain error. *See United States v. Ross*, 77 F.3d 1525, 1538 (7th Cir.1996). "Our plain error review is particularly light-handed in the context of jury instructions.... Reversals for plain error are infrequent because of the requirement that the error in the instructions be 'of such a great magnitude that it probably changed the outcome of the trial.'" *United States v. Griffin*, 84 F.3d 912, 925 (7th Cir.) (quoting *United States v. Douglas*, 818 F.2d 1317, 1320 (7th Cir.1987)), *cert. denied, sub nom. Rux v. United States*, —— U.S. ——, 117 S.Ct. 495, 136 L.Ed.2d 387 (1996).

If the transcript is correct, the error is plain. However, we find that it is unlikely that the error "changed the outcome of the trial." We would be more sympathetic to Granados's argument if we had any reason to believe the jury could have been misled. But no reasonable jury, given a modicum of common sense, could have believed that it was to find the defendant guilty regardless of whether the government proved its case beyond a reasonable doubt. The jury was told numerous times, by the defense counsel, the prosecutor, and the court, that the government had the burden of proving Granados's guilt beyond a reasonable doubt. Defense counsel began his closing argument by stating the judge would later inform the jurors that the prosecutor has the burden of proving each and every element of the crime beyond a reasonable doubt. *See* Trial Tr. at 447. During the government's final argument, the court interjected and told the jury: "Members of the jury, you will be instructed later by the Court orally and in writing that your sole function in this case is to determine whether the Government has proven the case beyond a reasonable doubt." Trial Tr. at 461. And the prosecutor argued to the jury that "extortion ... is what the evidence has proved beyond any reasonable doubt happened from May of 1989 through October 26, 1989, and as a result, the evidence has shown

that the defendants are guilty beyond any reasonable doubt." Trial Tr. at 466. The district court also correctly stated the law numerous times in other parts of the oral instructions. For example, the court stated:

> Each defendant is presumed to be innocent of the charges. This presumption remains with each defendant throughout every stage of the trial and during the deliberations on the verdict and is not overcome as to any defendant unless from all the evidence in the case you are convinced beyond a reasonable doubt that the defendant is guilty.
>
> The Government has the burden of proving the guilt of each defendant beyond a reasonable doubt, and this burden remains on the Government throughout the case.

Trial Tr. at 474–75.

Our confidence that the jury understood its role is bolstered by the fact that the jury immediately received correct written instructions to aid in deliberations. If the court had a slip of the tongue during the oral instruction, of which we are not convinced, the jury had the correct instructions in front of them during deliberations. The written instructions would have clarified any confusion the jurors may have had regarding the oral charge.

We are not convinced that the error is of judicial origin; it is at least likely that the error is one of transcription. The jury was correctly instructed numerous times and had the correct written instructions in the jury room during deliberations. Based on these considerations, we do not find that the error "changed the outcome of the trial" and therefore we decline to set aside the jury's verdict. *Cf. Gacy v. Welborn*, 994 F.2d 305, 308 (7th Cir.1993).

We find Granados's arguments on the sufficiency of the evidence, the prosecutor's closing argument, and the oral jury instructions to be unpersuasive. We therefore AFFIRM Granados's conviction.