In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3280

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

MATTHEW POOLE,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98 CR 560--David H. Coar, Judge.

Argued February 25, 2000--Decided March 22, 2000

Before BAUER, RIPPLE and MANION, Circuit Judges.

RIPPLE, Circuit Judge.  Matthew Poole was convicted in the district court of five counts of knowingly making false statements in connection with the purchase of firearms. See 18 U.S.C. sec. 924(a)(1)(A). The Bureau of Alcohol, Tobacco and Firearms ("ATF") requires that all gun purchasers fill out ATF Form 4473. Mr. Poole was charged with giving false answers to the Form 4473 questions that asked whether he was the "actual buyer" of the firearms and whether he had ever been convicted of a crime that would have prohibited him from possessing a firearm. Mr. Poole now submits that the district court abused its discretion on certain evidentiary rulings and abused its discretion by its denial of a motion for mistrial based upon the prosecutor's improper closing argument. For the reasons set forth in this opinion, we affirm the judgment of the district court.

I

BACKGROUND

A.  Facts

In November 1996, in an Illinois state court, Mr. Poole, pursuant to a plea agreement, pleaded guilty to felony possession of cannabis. The state court, in accepting his plea, advised him

that he could receive from 1 to 3 years imprisonment. Mr. Poole was sentenced to 12 months of felony probation. Under 18 U.S.C. sec. 922, it is illegal for convicted felons to possess firearms.

In April, May and June 1998, at Suburban Sporting Goods in Melrose Park, Illinois, Mr. Poole purchased a total of 14 guns, in five transactions, using his Firearm Owner's Identification ("FOID") card./1 On every visit to the gun shop, Mr. Poole was accompanied by another man./2 That other man selected the guns and paid for them. For each transaction, Mr. Poole filled out ATF Form 4473, completing five forms between April 1998 and June 1998. Question 8(a) on the form asks, "Are you the actual buyer of the firearm listed below?" Mr. Poole answered "yes" to this question on each form. Question 8(c) asks, "Have you been convicted in any court of a crime for which the judge could have imprisoned you for more than one year, even if the judge actually gave you a shorter sentence?" Mr. Poole answered "no" to this question on each form.

In August 1998, after receiving notification from the Illinois State Police that his FOID card had been revoked, Mr. Poole went back to the same gun shop and once again filled out ATF Form 4473 in order to effect the purchase of two more guns. Because Illinois has a 72-hour waiting period,/3 Mr. Poole and the other man planned to return in three days to complete the purchase of those guns. Before his planned return, however, Mr. Poole was arrested, and the proposed sale was terminated. He was charged with five counts of making false statements on a form used to purchase firearms, in violation of 18 U.S.C. sec. 924 (a)(1)(A),/4 and five counts of being a felon in possession of a firearm, in violation of 18 U.S.C. sec. 922(g)(1). He was not charged with the August 1998 attempted transaction, and, prior to trial, the Government dismissed the five counts of being a felon in possession of a firearm. In essence, the Government prosecuted Mr. Poole for being a "straw purchaser" by buying guns for someone who was unable to obtain them legally.

Mr. Poole pleaded not guilty based upon his assertions that he thought he was being truthful when he filled out the 4473 forms. He contended that he considered himself to be the actual buyer because he was the one with the FOID card. He further argued that he had not lied by stating that he did not have a felony conviction; he did not realize, he explained, that the November 1996 plea resulted in a felony conviction and that he could have been sentenced to at least one year in

prison for that conviction.

Prior to trial, the Government had filed a notice of intent to offer evidence, under Federal Rule of Evidence 404(b). This evidence pertained to the August 1998 attempted transaction. The district court, after a hearing, allowed this evidence to be presented at trial with a limiting instruction.

During the trial, Mr. Poole testified that he did not know anything about guns. In an effort to impeach Mr. Poole and therefore cast doubt on his credibility, the Government questioned Mr. Poole about his 1996 arrest because the police report stated that 5 guns were found during that arrest. Specifically, the prosecutor asked Mr. Poole whether guns were found in his apartment at the time of his arrest on his state cannabis charge. Mr. Poole answered, "No, sir, not in my apartment. Down the hallway but not in my apartment."/5 Tr. III at 237.

During her closing argument, the prosecutor commented on Mr. Poole's state felony conviction. Mr. Poole, contending that the prosecutor's comments were not supported by the record, moved for a mistrial. The district court denied the motion.

Mr. Poole now appeals, stating that he should be granted a new trial for the following reasons: 1) the district court improperly admitted evidence of Mr. Poole's August 1998 attempted transaction under Rule 404(b); 2) the district court improperly allowed the defendant to be questioned about the presence of guns at his 1996 arrest; and 3) the district court erred by not granting a mistrial based upon the allegedly improper closing argument of the prosecutor. We shall address each of these contentions.

II

DISCUSSION

A.  August 1998 Attempted Transaction

1.

Mr. Poole argues that the introduction of the August 1998 attempted transaction was improper under Federal Rule of Evidence 404(b) because the Government used that evidence for the purpose of showing his propensity to commit the crimes charged./6 Mr. Poole further states that such evidence should not have been admitted because he never was charged with any violations stemming from that incident. Additionally, Mr. Poole contends that this evidence was especially

prejudicial because the attempted transaction occurred after Mr. Poole's FOID card had been revoked.

The Government counters that evidence of this attempted transaction, which had occurred subsequent to the charged offense, properly was admitted because it showed Mr. Poole's intent and plan. The Government also points out that, in order to minimize the possibility of unfair prejudice, the district court gave a limiting instruction to the jury concerning this evidence.

The trial court's admission of evidence of other acts under Rule 404(b) is reviewed by this court under the abuse of discretion standard. See United States v. Asher, 178 F.3d 486, 491-92 (7th Cir.), cert. denied, 120 S. Ct. 359 (1999); United States v. Robinson, 161 F.3d 463, 466 (7th Cir. 1998), cert denied, 119 S. Ct. 1482 (1999); United States v. Lloyd, 71 F.3d 1256, 1264 (7th Cir. 1995), cert. denied, 517 U.S. 1250 (1996).

2.

When evaluating the admissibility of other acts under Rule 404(b), this court uses a four-prong test that incorporates the relevancy aspect of Rule 403: (1) the evidence of the other act must address a matter in issue other than the defendant's propensity to commit the crime charged; (2) the other act must be similar enough and close enough in time to be relevant to the matter in issue; (3) the evidence of the other act must be sufficient for the jury to find that the defendant committed the other act; and (4) the other act must have probative value that is not substantially outweighed by the danger of unfair prejudice. See Asher, 178 F.3d at 492; United States v. Smith, 103 F.3d 600, 603 (7th Cir. 1996); Lloyd, 71 F.3d at 1264.

a.

The other act must address a matter at issue. Mr. Poole based his defense upon his assertion that he did not knowingly give false statements on the ATF forms, thus making his own knowledge a matter at issue. Therefore, it was proper to allow the Government the opportunity to show that Mr. Poole knew full well what he was doing. We agree with the Government that evidence of the subsequent act shows "intent and plan." It supported the argument that, even though the defendant claimed to be the actual purchaser in the transactions at issue, his subsequent conduct showed that his claim was not true. Furthermore, this subsequent attempted transaction, without the benefit of a FOID card, was relevant with

respect to Mr. Poole's knowledge of his state felony conviction because in July 1998, the Illinois State Police had sent Mr. Poole notice of his FOID card revocation.

b.

The other act must be similar and close in time. The August 1998 incident occurred within a few months of the conduct that prompted Mr. Poole's indictment. Indeed, Mr. Poole was arrested on the very day that he was scheduled to pick up the guns from the August transaction. Moreover, other than the absence of his FOID card, which had been revoked, the transaction was virtually identical to Mr. Poole's other gun shop transactions.

c.

The evidence must be sufficient to show that the defendant committed the other act. Mr. Poole does not deny that he committed the August 1998 attempt to purchase guns. Indeed, the jury was not presented with any evidence that disputed that the August 1998 transaction occurred.

d.

The danger of unfair prejudice must not substantially outweigh the probative value. "'Relevant evidence is inherently prejudicial.'" Lloyd, 71 F.3d at 1265 (quoting Cook v. Hoppin, 783 F.2d 684, 689 (7th Cir. 1986)). When the other three prongs of the test are met, evidence should be excluded only if any resulting unfair prejudice substantially outweighs the probative value. See Asher, 178 F.3d at 494-95; Smith, 103 F.3d at 603-04. Care may be taken to decrease the possibility of unfair prejudice by issuing special jury instructions on the proper use of this evidence. See Smith, 103 F.3d at 604. It was undoubtably harmful to Mr. Poole's case when evidence of his subsequent attempted transaction was offered at trial. But harm alone is not enough to warrant exclusion under the heading of "unfair" prejudice. See Lloyd, 71 F.3d at 1265. In this case, the evidence of the subsequent act was directly relevant to Mr. Poole's intent, plan and knowledge of his actions. Furthermore, the district court issued limiting instructions to the jury on the proper use of this evidence. Consequently, we are not persuaded by Mr. Poole's argument stating that unfair prejudice outweighed the probative value. Therefore, we do not believe that the district court abused its discretion by admitting the evidence.

B.  Guns at the 1996 Cannabis Arrest

Mr. Poole contends that questions concerning the

presence of guns at his 1996 arrest for possession of cannabis were improper because he was not charged with any firearms violations as a result of that incident. Moreover, he submits, the prosecutor's questions were very prejudicial because they portrayed him as a "man of violence." Appellant's Br. at 21. He submits that the district court should have used the Rule 404(b) test to exclude the evidence. The Government counters that the circumstances surrounding the 1996 cannabis arrest were introduced to impeach Mr. Poole's testimony. We review the district court's decision to allow this line of questioning for abuse of discretion. See United States v. Given, 164 F.3d 389, 393 (7th Cir.), cert. denied, 120 S. Ct. 132 (1999).

The record discloses that Mr. Poole testified, on direct examination, that, when "James" approached him and asked if he knew anyone who had a gun, Mr. Poole said that he knew nothing about guns. He further testified that, while James and James' friend were looking at guns in the gun shop, he did not know what to look for, so he stood aside and did not participate in the conversation. The prosecutor, on cross-examination, first questioned Mr. Poole about his participation in the purchase of the firearms. He again denied that he knew anything about the guns that were being purchased. The prosecutor then pointedly asked him whether he knew "anything about guns." Tr. III at 234. He answered that he did not and that he did not even know how to shoot one. See id. The defense counsel then asked for a sidebar and objected to the line of questioning on the ground that the Government was setting the stage to ask Mr. Poole about the presence of guns at his 1996 cannabis arrest. The district court determined that, by asserting that he was not knowledgeable about guns, the Government was allowed to impeach him on that statement. The following cross-examination then took place:

Q: Now, Mr. Poole, you just told the members of the jury that you didn't know anything about guns, is that correct?
A: Yes, sir.
Q: In fact, you didn't even know how to shoot a gun, right?
A: Correct.
Q: You didn't handle any of the guns that were purchased by James, is that correct?
A: No, sir, I did not.
Q: And you didn't handle any of the guns that were purchased by his partner?
A: No, sir.
Q: But you had handled guns before, hadn't you?
A: No, sir.
Q: Wasn't it true that in that 1996 conviction,

Mr. Poole, that five handguns were found in your apartment?
A: No, sir, not in my apartment. Down the hallway but not in my apartment.

Tr. III at 237. Notably, Mr. Poole was given an opportunity to dispute the Government's suggestion that the guns were in his apartment.

We cannot say that the district court abused its discretion in admitting this testimony. Because the Government's case rested on the showing that Mr. Poole was purchasing the guns for someone else as a "straw purchaser," any evidence of Mr. Poole's personal possession of guns would not have benefitted, in any direct way, the Government's case. However, as the district court noted, this line of questioning would address Mr. Poole's credibility and therefore was admissible for that limited purpose. When used for impeachment purposes, the statements do not require the Rule 404(b) analysis that Mr. Poole argues. See United States v. Cerro, 775 F.2d 908, 914 (7th Cir. 1985).

C. The Government's Closing Argument

Mr. Poole also contends that the district court should have granted a mistrial because the prosecutor made improper comments during her closing argument. Mr. Poole argues that the prosecutor improperly relied upon her own personal knowledge and on other information that was not in the record. The Government replies that, because Mr. Poole put his lack of knowledge of his previous felony conviction at issue, closing argument appropriately included comments concerning the 1996 court proceeding and any reasonable inferences drawn from the evidence of Mr. Poole's court appearance. We review the district court's denial of a mistrial for an abuse of discretion. See United States v. Butler, 71 F.3d 243, 254 (7th Cir. 1995).

We follow a two-step analysis when assessing possible prosecutorial misconduct during closing argument. First, we look at the disputed remarks in isolation to see if they were improper; second, if the statements were improper, then we proceed to determine whether the statements, when assessed in the context of the record as a whole, denied the defendant a fair trial. See United States v. Morgan, 113 F.3d 85, 89 (7th Cir. 1997); Butler, 71 F.3d at 254; United States v. Badger, 983 F.2d 1443, 1450 (7th Cir.), cert. denied, 508 U.S. 928 (1993). When we reach this second step, in order to determine whether the defendant was denied a fair trial, we examine:

1) the nature and seriousness of the

prosecutorial misconduct, 2) whether the prosecutor's statements were invited by conduct of defense counsel, 3) whether the trial court instructions to the jury were adequate, 4) whether the defense was able to counter the improper arguments through rebuttal, and 5) the weight of the evidence against the defendant.

Badger, 983 F.2d at 1450.

1.

Mr. Poole alleges that the prosecutor made improper closing remarks when she characterized the circumstances surrounding Mr. Poole's 1996 plea agreement in state court on the cannabis charge. The prosecutor described Mr. Poole's access to legal counsel and the courtroom setting. She told the jury that the 1996 trial transcript supported the contention that Mr. Poole had received legal counsel from two attorneys. She continued by giving her own assessment of the duties and roles those attorneys played:

[H]is lawyers on his behalf would have been testing the strength of the state's evidence. And what that means and why it's relevant here is that Matthew Poole would have been present and he would have been fully aware of what the state's charges were against him.

Tr. IV at 277. These comments were not unreasonable and improper.

In addition to discussing Mr. Poole's attorneys, the prosecutor stated that, "Matthew Poole stood before a judge in a courtroom probably like this one." Tr. IV at 278. The evidence presented at trial revealed that Mr. Poole did appear with counsel before a judge in a courtroom. Although Mr. Poole's 1996 trial was a state proceeding in night court, the particular physical appearance of the courtroom was not essential to the solemn nature of that proceeding. Moreover, Question 8(c) on ATF Form 4473 asks if the purchaser had been convicted in any court. Consequently, in assessing this remark in isolation, there is nothing to suggest that the prosecutor's remarks were improper.

2.

Even if the statement had been improper in isolation, Mr. Poole's argument would fail the second test in our analysis of possible prosecutorial misconduct during closing argument. Mr. Poole testified at trial that he did not know he had a felony conviction and that he did not know that he could have been sentenced to over

one year of imprisonment, thereby inviting the prosecutor's comments. Also, Mr. Poole had ample opportunity to refute the prosecutor's argument during his own closing.

Moreover, sufficient evidence existed for a reasonable jury to find Mr. Poole guilty on all counts. When challenging the sufficiency of evidence to support a conviction, "'[a]s an appellate court, we will not second-guess the jury on [the credibility determination].'" United States v. Curry, 79 F.3d 1489, 1497 (7th Cir. 1996) (quoting United States v. Lakich, 23 F.3d 1203, 1210-11 (7th Cir. 1994)). In assessing the weight of the evidence, we must look at the proof supporting the Government's allegation that Mr. Poole knowingly gave false statements concerning his felony conviction and knowingly gave false statements when he said he was the actual buyer. In addition to arguing his lack of knowledge of his felony conviction, Mr. Poole argued that because his FOID card was being used to effectuate the purchase, he believed he was the actual buyer. "[The defendant] was free to make these arguments to the jury. The jury, in turn, was free to reject them." United States v. Obiuwevbi, 962 F.2d 1236, 1239 (7th Cir. 1992). Mr. Poole testified at trial that he bought guns for a man named "James," that Mr. Poole personally did not pay for the guns, and that he never had possession of the guns. That testimony alone could be enough evidence for a reasonable jury to find that Mr. Poole knowingly gave false statements when he stated that he was the actual buyer. Additionally, the jury was presented evidence that Mr. Poole was a convicted felon, that he had appeared in state court with counsel before a judge, and that he had signed a plea agreement with respect to that conviction. Most importantly, a special agent of the ATF testified that Mr. Poole had related to her his understanding that, as a felon, he could not possess firearms and then described each purchase.

The motion for mistrial was properly denied by the district court.

Conclusion

We have reviewed each of Mr. Poole's contentions and conclude that the district court did not abuse its discretion in adjudicating any of these issues. Accordingly, the judgment of the district court is affirmed.

AFFIRMED


/1 Illinois residents may not purchase or possess a

firearm without a valid FOID card. Convicted felons are not eligible to obtain a FOID card, and a felony conviction results in the revocation of a valid FOID card. Mr. Poole's FOID card had not been revoked at the time of his felony conviction and was not revoked until after he had used it to purchase 14 firearms.

/2 On April 30, 1998, his first visit to the gun store, Mr. Poole was accompanied by a man he refers to as "James." On all subsequent visits, Mr. Poole was accompanied by a man he refers to as "James' friend."

/3 The 72-hour waiting period gives the licensed dealers time to obtain the necessary approval of the Illinois State Police for every firearm sale. During the 72-hour period, the Illinois State Police check the purchaser's criminal and mental history before giving that approval. Nevertheless, Mr. Poole had been able to purchase 14 firearms from April 1998 through June 1998.

/4 18 U.S.C. sec. 924(a)(1)(A) states in part:

whoever--knowingly makes any false statement or representation with respect to the information required by this chapter to be kept in the records of a person licensed under this chapter . . . shall be fined under this title, imprisoned not more than five years, or both.

18 U.S.C. sec. 924(a)(1)(A) (emphasis added).

/5 Mr. Poole was charged with felony possession of cannabis, but he was never charged with gun violations stemming from his 1996 arrest.

/6 Federal Rule of Evidence 404(b) states as follows:

Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial. Fed. R. Evid. 404(b).